J-S04015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.-M.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2273 EDA 2024 |

Appeal from the Order Entered August 27, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000918-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: K.-M.O.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2274 EDA 2024 |

Appeal from the Decree Entered August 27, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000040-2024

BEFORE:  OLSON, J., STABILE, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.:                    **FILED MAY 21, 2025**

J.S. ("Father") appeals from the decree entered August 27, 2024, which granted the petition of the Philadelphia Department of Human Services ("DHS") and involuntarily terminated his parental rights to his daughter,

K.-M.O.L. a/k/a K.-M.L. ("Child") (born in March of 2012).[1]  Father further appeals from the August 27, 2024 order changing Child's permanency goal to adoption.  We vacate the termination decree and remand for further proceedings consistent with this opinion.  We affirm the goal change order.

Given the nature of our disposition, we need not detail the full factual and procedural history of this appeal.  Briefly, DHS obtained protective custody of Child and two of her younger siblings in September 2021, after Mother abandoned them and traveled to South Carolina.  *See* N.T., 8/27/24 (Volume 1), at 17, 101-102; *see also* Trial Court Opinion, 10/31/24, at 5-8. On November 23, 2021, the trial court adjudicated Child dependent.  *See id.* at 22.  After initial placement in kinship care, Child was transferred to foster care with V.C. in May 2022, where she remained at the time of the subject hearing.  *See* DHS Exhibits 1-4; *see also* N.T., 8/27/24 (Volume 1), at 57-59, 81-82.

On September 13, 2021, the court appointed the Defender Association of Philadelphia Child Advocacy Unit ("the Defender Association"), as counsel and guardian *ad litem* for the Child in the dependency proceeding.  *See* Trial Court Order, 9/13/21.  Then, on November 10, 2022, the court appointed

_____

[1] The court involuntarily terminated the parental rights of O.S., the mother of Child ("Mother"), to Child and three younger siblings pursuant to separate decrees entered on the same date.  Mother appealed the termination decrees. We address her appeals by separate memorandum at Docket Nos. 2275-2278 EDA 2024.

Linda Walters, Esquire, as counsel for Child. *See* Trial Court Order, 11/10/22. The Defender Association remained appointed as Child's guardian *ad litem*.

On January 25, 2024, DHS filed a petition for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), as well as a petition for a goal change from reunification to adoption. The trial court ultimately held a combined evidentiary hearing on DHS's petitions on August 27, 2024. Child, then twelve years old, was represented by Arin Brill, Esquire, of the Defender Association and Attorney Walters.[2]

DHS presented the testimony of the Community Umbrella Agency ("CUA") case manager, Taisha Sylvester; CUA visitation coach, Alexis Townes; and Child's foster mother, V.C. At the conclusion of DHS's case-in-chief, Attorney Walters provided the court a verbal "report" as to Child's preferences and the court interviewed Child, *in camera*, with the participation of all counsel. *See* N.T., 8/27/24 (Volume 1), at 96-101. Attorney Walters conveyed that the Child was "adamant" in her desire for adoption, as confirmed by her *in camera* interview. *See id.* at 97-98; N.T., 8/27/24

---

[2] During the proceeding, it appears that Attorney Brill represented Child's best interests and Attorney Walters represented Child's legal or preferred interests.

(Volume 2),[3] at 10-11, 16-17, 23; *see also* DHS Exhibits 7, 8. Attorney Brill declined to present any evidence. The court then granted Attorney Walters' request to be excused from the proceeding, without objection, as follows:

> [ATTORNEY] WALTERS: Your Honor, if I did my report, do you need me? I can stay, but I helped us [sic] superfluous then I might as well go. It's up to you.
>
> THE COURT: Do we need Ms. Walters for any reason?
>
> [COUNSEL FOR MOTHER]: I can't think of any.
>
> [ATTORNEY] BRILL: No
>
> THE COURT: All right [sic]. Thank you, Ms. Walters.
>
> [ATTORNEY] WALTERS: Thank you, Your Honor. I have a long drive. I appreciate it.
>
> ([Attorney] Walters was excused).

N.T., 8/27/24 (Volume 1), at 101. Following Attorney Walters' departure, the court proceeded with the cases of Mother and Father and heard testimony from Mother,[4] the maternal grandmother, and Father, as well as closing argument, prior to placing its decision on the record, all in Attorney Walters' absence. *See id.* at 101-181.

_____

[3] We observe that Volume 2 of the Notes of Testimony from the August 27, 2024 hearing comprises the sealed *in camera* interviews of the three oldest children, which were transcribed and included as part of the certified record.

[4] Mother testified on her own behalf in connection with DHS's petitions to terminate her parental rights to Child and her siblings, as well as the goal change petitions.

By decree dated and entered on August 27, 2024, the trial court involuntarily terminated Father's parental rights to Child. By separate order dated and entered the same day, the court also changed Child's permanency goal from reunification to adoption.

On September 2, 2024, Father filed timely notices of appeal, along with concise statements of error complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). This Court later consolidated Father's appeals *sua sponte*. The trial court filed a responsive Rule 1925(a) opinion on October 31, 2024.

On appeal, Father raises the following issues for our review:

1. Whether the trial court committed reversible error when the trial court changed the goal to adoption and involuntarily terminated Father's parental rights, where such determination was not supported by clear and convincing evidence under the Adoption Act, 23 [Pa.C.S.A. § 2511(a)(1), (2), (5), and (8)]?

2. Whether the trial court committed reversible error when the trial court changed the goal to adoption without giving primary consideration to the effect that the adoption would have on the developmental, physical and emotional needs of [Child] as required by the Adoption Act, [23 Pa.C.S.A. § 2511(b)?

3. Whether the trial court erred because the evidence was overwhelming and undisputed that Father demonstrated a genuine interest and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with [Child]?

Father's Brief at 8 (cleaned up).[5]

_____

[5] In his appellate brief, Father also raises the following issue for our review:

*(Footnote Continued Next Page)*

Our standard of review in cases concerning the involuntary termination of parental rights "is limited to a determination of whether the decree . . . is supported by competent evidence." **Interest of M.E.**, 283 A.3d 820, 829 (Pa. Super. 2022) (internal citations and quotation marks omitted). We have further reiterated:

> When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.
>
> An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

_____

> Whether the trial court abused its discretion and erred as a matter of law in changing the permanency goal to adoption from reunification, as there was not competent evidence presented that it was in the best interest of [] Child?

Father's Brief at 8. Father did not raise this issue in his Rule 1925(b) concise statement. Father also did not address or develop this claim in his appellate brief. We therefore conclude that Father has waived this claim. **See In re M.Z.T.M.W.**, 163 A.3d 462, 466 (Pa. Super. 2017) (citation omitted) ("[I]t is well-settled that issues not included in in an appellant's statement of questions involved **and** concise statement of errors complained of on appeal are waived."); **see also Commonwealth v. Taylor**, 277 A.3d 577, 591 (Pa. Super. 2022) (citation omitted) ("When issues are not properly raised and developed in briefs, or when the briefs are wholly inadequate to present specific issues for review, a Court will not consider the merits thereof.").

- 6 -

> In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Id.* at 829-30 (internal citations and quotation marks omitted).

Prior to reaching the merits of Father's issues relating to the termination decree, we must first address *sua sponte* whether the trial court appointed legal counsel to represent Child for the contested termination proceeding pursuant to Section 2313(a). *See In re Adoption of K.M.G.*, 240 A.3d 1218, 1235 (Pa. 2020).

Section 2313 of the Adoption Act provides, in relevant part:

> **(a) Child.**—The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian *ad litem* to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S.A. § 2313(a).

In *Interest of H.H.N.*, 296 A.3d 1258 (Pa. Super. 2023), this Court stated:

> Our Supreme Court has explained that "Section 2313(a) requires the appointment of counsel who serves the child's legal interests in contested, involuntary [termination of parental rights]

- 7 -

proceedings." *In re Adoption of L.B.M.*, [161 A.3d 172, 180 (Pa. 2017)] (footnote omitted).  Further, the *L.B.M.* Court held that "**the failure to appoint counsel for a child involved in a contested, involuntary termination of parental rights proceeding is a structural error and is not subject to harmless error analysis**." *Id.* at 183.  **Further, the failure to appoint counsel to represent a child's legal interests pursuant to Section 2313(a) is a non-waivable error**.  [*In re T.S.*, 192 A.3d 1080, 1087 (Pa. 2018)].  Subsequently, the Supreme Court clarified that "trial courts are obligated by Section 2313(a) to appoint counsel to serve the critical role of a child's attorney, zealously advocating for the legal interests of the child who otherwise would be denied a voice in the [involuntary] termination of parental rights proceedings." *In re Adoption of K.M.G.*, [240 A.3d 1218, 1233-1234 (Pa. 2020)] (citation omitted).  In the context of [involuntary termination of parental rights] proceedings, the child's "legal interests" is synonymous with "the child's preferred outcome[.]" *T.S.*, 192 A.3d at 1082 (footnote omitted); *see also* Pa.R.J.C.P. 1154, cmt.

*H.H.N.*, 296 A.3d at 1263-1264 (emphasis added) (some brackets and parentheses in original).

In *L.B.M.*, our Supreme Court explained:

A structural error is defined as one that affects the framework within which the trial proceeds, rather than simply an error in the trial process itself.  Structural errors are not subject to harmless error analysis.  Generally, denial of counsel is a structural error, although such error usually stems from deprivation of a constitutional right to counsel.  Here, by contrast, [a child's right to legal counsel in the context of termination proceedings] is statutory.  Nonetheless, we do not find that distinction to be determinative.  The same concerns are evident regardless of the derivation of the right.  Whether the right to counsel is conferred by constitution or statute, the right having been conferred must be protected.

In criminal and [involuntary termination of parental rights] cases alike, critical rights are at stake.  With respect to the former, the framers of our Constitutions, and the courts interpreting those charters, have determined that counsel was required to ensure that liberty interests and [due] process rights are protected.  With

respect to the latter, our General Assembly has decided that counsel for the child is required because of the primacy of children's welfare, the fundamental nature of the parent-child relationship and the permanency of termination. The legislature has codified a process that affords a full and fair opportunity for all of the affected parties to be heard and to participate in a[n involuntary termination of parental rights] proceeding. The denial of mandated counsel compromises the framework of the proceedings and constitutes a structural error. Further . . . harmless error analysis would require speculation after the fact to evaluate the effect of the lack of appointed counsel, effectively requiring proof of a negative. For all of these reasons, we hold that the failure to appoint counsel for a child involved in a contested, involuntary termination of parental rights proceeding is a structural error and is not subject to harmless error analysis.

*L.B.M.*, 161 A.3d at 183 (internal citations and quotation marks omitted).

With respect to the duties and obligations of a child's legal counsel, this Court further stated:

Regarding the role of child's legal counsel, this Court has explicitly rejected the notion that child's legal counsel fulfills his or her obligations under Section 2313(a) "by discerning [the child's] preference and report[ing] it to the court[.]" [*Interest of D.G.*, 241 A.3d 1230, 1237 (Pa. Super. 2020)]; *see also* [*Interest of D.N.G.*, 230 A.3d 361, 366 (Pa. Super. 2020)].

Indeed, this Court has stated that such a

narrow characterization of legal counsel's duties misstates [the child's legal counsel's] obligation to his [or her] client pursuant to [Section] 2313(a). While legal representation in this context necessarily involves talking to the child client and reporting the child's preferences to the court, it is in no way limited to those two actions. To the contrary, pursuant to the majority of justices in *In re Adoption of L.B.M.*, [161 A.3d] at 180[,] **[the child's legal counsel is] required to advocate on behalf of [the child] and provide zealous client-directed representation of [the child's] legal interests**.

> *D.N.G.*, 230 A.3d at 366 (citation omitted); *see also In re P.G.F.*, [247 A.3d 955, 966 (Pa. 2021)] (stating that "[g]enerally, an attorney acting as a child's legal counsel must, at a minimum, attempt to ascertain the child's preference and **advocate on the child's behalf**.)" (emphasis added)).

*H.H.N.*, 296 A.3d at 1264-65 (some emphasis added) (footnotes omitted) (some brackets and parentheses in original).[6]  Moreover, we explained "that limiting child's legal counsel's advocacy to the mere reporting of the child's preferred outcome to the trial court at the [involuntary termination] hearing, renders counsel's representation insufficient and deprives the child of his or her statutory right to counsel under 23 Pa.C.S.[A.] § 2313(a)."  *Id.* at 1265-1266.

During a contested involuntary termination hearing in *H.H.N.*,  the trial court dismissed court-appointed legal counsel for the children in the middle of the child welfare agency's case-in-chief due to counsel's inattentiveness and disruption through his use of his cellular telephone.  In excusing legal counsel, the trial court directed legal counsel to report on his interviews with the children at a forthcoming goal change hearing.  *See id.* at 1260-1261.  After considering these actions, we found that the trial court committed structural error and "deprived [the c]hildren of their statutory right to counsel."  *Id.* at

---

[6] Our Supreme Court has declined to adopt a requirement that a child's legal representative **must** divulge his client's preferences.  *See K.M.G.*, 240 A.3d at 1237-1238 ("[W]e find nothing in the language of the Adoption Act requiring that their preference be placed on the record. . . .  Moreover, we observe that the child's legal counsel has a duty of confidentiality . . . such that they should not be compelled to disclose the child's preferences.").

1266 (citations omitted). We rejected the trial court's determination that legal counsel's presence "was not necessary because his role as [the c]hildren's legal counsel was simply to interview [the c]hildren and report his findings to the court." *Id.* at 1265.

Instantly, similar to *H.H.N.*, the trial court excused legal counsel for Child, Attorney Walters, albeit at her request, in the midst of the subject termination hearing. *See* N.T., 8/27/24 (Volume 1), at 101. As noted, following Attorney Walters' departure, the court proceeded to hear testimony from Mother, the maternal grandmother, and Father, as well as closing arguments. Throughout these critical stages of the termination process, then, Child was deprived the benefit of representation of legal counsel. *See id.* at 101-81. Critically, in so doing, the trial court appeared to misapprehend Attorney Walters' role as legal counsel for Child by dismissing her after she reported Child's preferences. *See id.* at 101. Thus, like *H.H.N.*, the trial court deprived Child of her statutory right to counsel, committing structural error. 296 A.3d at 1266. Accordingly, we are constrained to vacate the decree granting DHS's petition to involuntarily terminate Father's parental rights to Child and remand for a new termination hearing.

Lastly, we turn to Father's third and final issue, in which he assails the goal change order. *See* Father's Brief at 23-25. This Court has held that the exclusion of a child's court-appointed legal counsel from a dependency proceeding also constitutes structural error pursuant to *L.B.M., supra*, and

may be addressed as such when the issue is raised on appeal and preserved in the record. *See Interest of J.F.*, 308 A.3d 1252, 1261 (Pa. Super. 2024). Importantly, however, the *J.F.* panel declined to address whether the dismissal of the child's legal counsel was non-waivable on appeal where counsel failed to timely object to his dismissal during the hearing. *See id.* at 1261 n.9. ("We emphasize that structural error and non-waivability are separate legal concerns."), *citing T.S.*, 192 A.3d at 1087 ("[S]tructural error means that no harmless-error analysis is relevant; however, it does not always imply non-waivability."). Likewise, here, Father did not object to the dismissal of Child's counsel during the subject proceedings. Further, he did not assert legal error as a result of the dismissal of Child's counsel in his Rule 1925(b) concise statement or in his appellate brief. Therefore, in contrast to our disposition with respect to the involuntary termination decree, in the absence of proper preservation, we do not address the deprivation of Child's legal counsel as it relates to the goal change order.

Turning to the merits of Father's third issue, Father argues that it was not in Child's best interests to change Child's permanency goal from reunification to adoption because he was "compliant with some of his goals and was working on others." Father's Brief at 25. He asserts that his efforts were "overlooked," and reunification was "still a viable option." *Id.* We disagree.

We review decisions changing a placement goal for an abuse of discretion. *See In the Interest of L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015), citing *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). This Court has stated:

> Pursuant to [Section] 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia*: (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. *R.J.T.*, 9 A.3d at 1186-87 n.8. The best interests of the child, and not the interests of the parent, must guide the trial court. *In re S.B.*, 943 A.2d 973, 978 (Pa. Super. 2008). As this Court has held, "a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." *In re N.C.*, 909 A.2d 818, 824 (Pa. Super 2006), *quoting In re Adoption of M.E.P.*, 825 A.2d 1266, 1276 (Pa. Super. 2003).

*In re A.B.*, 19 A.3d 1084, 1088-89 (Pa. Super. 2011) (citation formatting modified). "When the child welfare agency has made reasonable efforts to return a foster child to . . . her biological parent, but those efforts have failed, then the agency must redirect its efforts towards placing the child in an adoptive home." *S.B.*, 943 A.2d at 978.

The record confirms that changing Child's permanency goal to adoption after almost three years in placement is in her best interest given Father's lack of compliance and progress in achieving reunification throughout the dependency proceeding. *See* N.T, 8/27/24 (Volume 1) at 42-55; *see also*

DHS Exhibit 1; *see also Interest of S.J.*, 318 A.3d 1289, 2024 WL 1855122, at *12 (Pa. Super. April 29, 2024) (non-precedential decision) (affirming a goal change from reunification to adoption where a mother failed to make progress and achieve reunification during a three-year period).[7]  As such, Father's claim fails.

Accordingly, we vacate the termination decree and remand for a new termination hearing.  Upon remand, the trial court shall appoint counsel to represent the legal interests of Child for the full contested involuntary termination proceeding pursuant to Section 2313(a).  *See* 23 Pa.C.S.A. § 2313(a); *K.M.G.*, 240 A.3d at 1235.

Involuntary termination decree vacated.  Goal change order affirmed. Case remanded for further proceedings.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/21/2025

---

[7] Pa.R.A.P. 126(b) provides that non-precedential decisions of this Court may be cited for their persuasive value if filed after May 1, 2019.