J-A24004-23

2024 PA Super 12

| | | |
|---|---|---|
| IN THE INTEREST OF: J.F., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.F., MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1774 EDA 2023 |

Appeal from the Order Entered July 12, 2023
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No:  CP-51-DP-0000424-2021

BEFORE:  STABILE, J., KING, J., and SULLIVAN, J.

OPINION BY STABILE, J.:                    **FILED JANUARY 22, 2024**

J.F. ("Child"), born in November 2010, appeals the July 12, 2023 permanency review order reunifying him with his biological father, K.F. ("Father"), transferring physical and legal custody of the Child to Father, and discharging Child's dependency.  After careful review, we conclude that Child's statutory and rule-based rights to counsel in these dependency proceedings were violated, which constitutes structural error pursuant to ***In re Adoption of L.B.M.***, 161 A.3d 172 (Pa. 2017) and its progeny.  Thus, we vacate and remand for further proceedings consistent with this opinion.

We glean the factual and procedural history of this matter from the certified record.  The Philadelphia Department of Human Services ("DHS") first became involved with this family on April 20, 2021, when DHS obtained an order of protective custody for both Child and his younger half-brother, X.Z., after their mother was killed by her paramour, X.Z.'s father, who committed

suicide. At the time of these events, Child was approximately ten years old and Father was incarcerated in the State of New York.[1] Accordingly, Child and X.Z. were placed in kinship care with their maternal grandmother, Y.S. ("Maternal Grandmother"). This placement was confirmed at a shelter care hearing on April 21, 2021. The same day, the trial court appointed the Defender Association of Philadelphia Child Advocacy Unit ("Child Advocacy Unit") to represent both Child's legal and best interests pursuant to 42 Pa.C.S.A. §§ 6311(a) ("Guardian *ad litem* for child in court proceedings."). **See also** 42 Pa.C.S.A. §§ 6337 ("Right to counsel"), 6337.1(a) ("Right to counsel for children in dependency and delinquency proceedings").

On July 7, 2021, the trial court adjudicated Child dependent and established a permanency goal of reunification with Father with the concurrent goal of adoption or permanent legal custody. Father was released in January 2022 and assigned a number of permanency objectives to facilitate reunification, including providing proof of income and housing, signing various consents and releases of information, and participating in visitations with Child. Father was initially permitted in-person and virtual supervised visits. In the permanency review orders issued following his release from incarceration, the court assessed that Father was fully compliant with his objectives. In August 2022, Father's visits were transitioned to unsupervised.

---

[1] The precise nature of Father's incarceration, or his underlying conviction pursuant to New York law, is not clear from the record.

In November 2022, the visits were expanded to include weekend stays at Father's New York home.

The parties do not dispute that Child has consistently maintained that he has no desire to reunify with Father and, instead, wishes to remain with Maternal Grandmother and X.Z. During the course of a permanency review hearing on May 10, 2023, Father's counsel asserted that a conflict existed between Child's legal and best interests and requested the appointment of separate legal interests counsel. **See** N.T., 5/10/23, at 41; **see also** Pa.R.J.C.P. 1151(B)(2) (providing that a trial court is empowered to appoint separate best interests and legal interests counsel in dependency proceedings). The attorney from the Child Advocacy Unit objected and countered that there was no conflict between Child's respective interests. **See** N.T., 5/10/23, at 41 ("We believe his best interest is what he's interested in at this time, which he expressed to us, and that would be totally inappropriate.").

Father's request implicated "two separate and distinct categories" of interests that arise in cases concerning Children under Pennsylvania law: "a child's legal interests, which are synonymous with the child's preferred outcome, and a child's best interests, which the trial court must determine." **L.B.M.**, **supra** at 174. Our Supreme Court has further delineated this distinction, as follows:

> "Legal interests" denotes that an attorney is to express the child's wishes to the court regardless of whether the attorney agrees with

the child's recommendation. "Best interests" denotes that a guardian *ad litem* is to express what the guardian *ad litem* believes is best for the child's care, protection, safety, and wholesome physical and mental development regardless of whether the child agrees.

**L.B.M.**, **supra** at 174 n.2 (internal citations and quotation marks omitted). Although this division is often discussed in contested involuntary termination of parental rights ("TPR") cases, the "dichotomy between best interests versus legal interests exists in the representation of a child during the dependency proceedings, and not just during a contested termination hearing." **Matter of Adoption of: W.D.A.**, 2019 WL 6716283, at *6 n.5 (Pa. Super. Dec. 10, 2019).

The trial court questioned Child concerning this potential conflict without any other party or counsel present. **See** N.T., 5/10/23, at 42 ("[E]veryone may be excused. I'm going to speak to [Child]."). Based upon this testimony, the trial court granted Father's conflict motion and immediately appointed William Calandra, Esquire ("Attorney Calandra"), to serve as Child's guardian *ad litem* and represent Child's best interests, while the Child Advocacy Unit would continue representing Child as legal interests counsel. **See id**. at 48; **see also** Pa.R.J.C.P. 1151(C). Although legal interests counsel requested a transcript of Child's testimony, the court sealed the record of Child's interview in a manner precluding the creation of a transcript. **See** N.T., 7/12/23, at 40.

At the conclusion of the May 10 hearing, the trial court directed Child to spend June 9 through July 7, 2023, visiting Father in New York. On May 18,

- 4 -

2023, however, Attorney Calandra submitted a filing styled as a motion for emergency relist, wherein he averred that Child had disclosed, for the first time, a "physical altercation" that occurred on New Year's Eve of 2022 between Father and his paramour, W.R. *See* Motion for Emergency Relist, 5/18/23, at ¶ 6. Given the Child's history of "exposure to extreme domestic violence" and the impending long-term visitation between Child and Father, Attorney Calandra requested a hearing. *Id.* at ¶¶ 6-12.

The emergency hearing was held on May 31, 2023. Therein, Child testified that he witnessed Father striking W.R. and pulling her hair while both parties were intoxicated. *See* N.T., 5/31/23, at 14-18. Father and W.R. also testified and contradicted Child's recollection of these events. W.R. characterized the incident as a "minor argument" and Father averred that he did not commit physical violence against W.R. *See id.* at 32-34, 49-50. Ultimately, the trial court entered reaffirmed Child's summer visit with Father.

Thereafter, a final permanency review hearing convened on July 12, 2023, at which point Child was twelve years old. Therein, DHS requested reunification and Child's discharge from dependency. *See* N.T. Hearing, 7/12/23, at 9-10. DHS adduced testimony from Kayla Thurman, a case manager for the Community Umbrella Association ("CUA") assigned to Child's case testified. Father appeared virtually and also testified. The circumstances surrounding Child's testimony, however, are our principal concern here.

Specifically, immediately prior to Child's testimony, his legal interests counsel requested that Father be sequestered during Child's testimony. **See id.** at 36 ("[Child] has asked that Father is not virtually present during his testimony."). The trial court indicated that it would only allow Child to testify outside of Father's presence if all parties and counsel were absent.[2] **See id.** at 36-37 ("So if Father's not going to be present, then no one else should be either. . . . Make a decision as to whether you want all counsel present or no counsel present."). This proposal drew immediate objections from, *inter alia*, Child's legal interests counsel. **See id.** at 38 ("[W]e are objecting to this as we have a right to be present and Father does not have a right to present to hear this testimony."). Over these objections, the trial court interviewed Child outside of the presence of all parties and all counsel, including Attorney Calandra and Child's legal interests counsel.[3] **See id.** at 40.

_____

[2] We note that Father was sequestered, without objection, during Child's testimony on May 31, 2023. **See** N.T., 5/31/23 at 8, 24-62. Father's counsel did not object to Child's sequestration request at the July 12, 2023 hearing.

[3] The transcript of this interview reveals that the trial court did not direct any specific questions to Child, but merely provided him with an open-ended opportunity to share information. **See** N.T., 7/12/23, at 7 ("This is your opportunity . . .to let me know what you like . . . as opposed to . . . having everyone ask you a bunch of questions or somehow make you feel uncomfortable. This is your opportunity to share with me anything that you would like."). Consequently, Child provided undirected and disorganized testimony. **See id.** at 8-20. The court did not ask any clarifying questions.

The same day, the trial court filed an order directing that Child was to be reunited with Father on July 17, 2023. **See** Permanency Review Order, 7/12/23, at 2-3. The order also mandated that Child be discharged from dependency and directed DHS to submit the appropriate administrative paperwork to transfer custody of Child to Father as of the same day. **See id.**

On July 13, 2023, Child filed a timely notice of appeal with a concise statement of errors pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Thereafter, the trial court filed a responsive opinion pursuant to Rule 1925(a)(2)(ii).

Child has raised the following issues for our consideration:

A.   Did the trial court err as a matter of law and abuse its discretion by excluding all attorneys, including counsel for [Child], from the courtroom during the pendency of the proceeding, over counsels' objection, and by refusing to unseal testimony taken outside the presence of counsel?

B.   Did the trial court err as a matter of law and abuse its discretion by ordering that [Child] be reunified with Father, where the evidence clearly demonstrated that [Child's] best interests were best served by remaining with Maternal Grandmother, and not being transferred to Father's custody?

Child's Brief at 5 (cleaned up).[4]

This appeal arises from an order entered in dependency proceedings. Our standard of review requires us "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record,

_____

[4]  In lieu of a brief, Attorney Calandra has submitted a letter advocating in "full" support of Child's position. **See** No Brief Letter, 9/12/23.

but does not require [this Court] to accept the lower court's inferences or conclusions of law." **Interest of T.G.**, 208 A.3d 487, 490 (Pa. Super. 2019). Additionally, we must "exercise our independent judgment in reviewing the court's determination" in order "to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record." **In re R.W.J.**, 826 A.2d 10, 12 (Pa. Super. 2003) (internal citations omitted). Thus, we review the trial court's determination for an abuse of discretion. **See T.G.**, **supra** at 490. "[A]n abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings." **Bouzos-Reilly v. Reilly**, 980 A.2d 643, 644 n.1 (Pa. Super. 2009).

Child's first claim for relief concerns the trial court's *in camera* questioning of Child on July 12, 2023, without Child's attorneys present. Child argues that this effectively deprived him of the advice and support of counsel at critical junctures in the dependency proceedings, which he argues constitutes a "structural error" pursuant to **In re Adoption of L.B.M.**, 161 A.3d 172 (Pa. 2017). **See** Child's Brief at 38-45. Specifically, a structural error is one that requires reversal or *vacatur* without assessing whether the particular oversight is harmless or not. **See L.B.M.**, **supra** at 182.

DHS counters that **L.B.M.** is inapplicable to the instant case and argues that any arguable error in excluding Child's attorneys from the July 12, 2023

*in camera* interview was harmless.[5]  **See** DHS's Brief at 13-20.  The trial court similarly suggests any error was harmless in light of the totality of the evidence.  **See** Trial Court Opinion, 8/4/23, at 22 ("The evidence reflected that reunification best served the needs and welfare of [Child].").

Before contending with the applicability of **L.B.M.**, however, it behooves this Court to determine whether an error respecting Child's legal representation has occurred.  The trial court maintains that the procedure that it followed regarding the taking of Child's testimony on July 12 was appropriate pursuant to Pa.R.C.P. 1915.11 ("Appointing Child's Attorney.  Child Interview. Child Attending Proceedings.").  **See id**. at 21-22.  This Rule is only applicable in custody proceedings.  **See** Pa.R.C.P. 1915.1.  The instant case sounds in dependency and, as such, is governed by the provisions of the Juvenile Act, 42 Pa.C.S.A. §§ 6301, *et seq*., ("the Act").  The rules governing custody matters are inapplicable.  This matter is governed by the Pennsylvania Rules of Juvenile Court Procedure ("the Rules").  **See** Pa.R.J.C.P. 1100(A).

Thus, we will begin our review by assessing the propriety of the trial court's actions under the appropriate statutory and procedural standards.  We are bound to interpret the Rules in a manner that effectuates the purposes of the Act, which are set forth at 42 Pa.C.S.A. § 6301(b).  **See** Pa.R.J.C.P.

---

[5]  DHS argues Child waived his claim concerning his testimony on July 12, 2023 by consenting to the interview of Child outside the presence of his attorneys.  The record belies this assertion.  **See** N.T., 7/12/23, at 38-42 (evincing that Child's legal interest counsel made a timely objection).

1101(C).  Accordingly, we must interpret the Rules in a manner that, *inter alia*, ensures all parties receive "a fair hearing" that recognizes and enforces "their constitutional and other legal rights[.]"  42 Pa.C.S.A. § 6301(b)(4).

Amongst other rights, parties in dependency proceedings are "entitled to representation by legal counsel at all stages of any proceedings" as a matter of statutory law.  42 Pa.C.S.A. § 6337.  This statutory entitlement is more explicit with respect to children.[6]  ***See id***. ("[C]ounsel must be provided for a child."); ***see also*** 42 Pa.C.S.A. § 6337.1(a) ("Legal counsel shall be provided for a child who is alleged or has been found to be a dependent child in accordance with the [Rules].").  Based upon the foregoing, we are bound to interpret the Rules in a fashion that ensures a dependent child's statutory entitlement to the assistance of counsel is fully realized.

Although separate legal and best interests counsel were appointed to represent Child in this matter, they were excluded from the trial court's *in camera* interview of Child on July 12, 2023.  ***See*** N.T., 7/12/23, at 38-42.  We find the provisions of Pa.R.J.C.P. 1128(A)-(B) to be illuminating in assessing the validity of the trial court's decision to proceed outside of the presence of

_____

[6]  In dependency litigation, a child may only waive his right to legal counsel if the waiver is "knowingly, intelligently, and voluntarily made," and the trial court conducts an on-the-record colloquy.  Pa.R.J.C.P. 1152(A)(2); ***see also*** 42 Pa.C.S.A. § 6337.1(b)(3) (providing that a child over the age of fourteen may waive their right to counsel under certain circumstances).  However, "[a] child may **not** waive the right to a guardian *ad litem*."  Pa.R.J.C.P. 1152(A)(1) (emphasis added).  Child did not waive his right to counsel in this case.

Child's legal and best interests counsel. In pertinent part, the Rules provide as follows:

> **A. General Rule.** All parties, including the child, shall be present at any proceeding unless the exceptions of paragraph (B) apply.
>
> **B. Exceptions.**
>
> (1) *Absence from Proceedings.* The court may proceed in the absence of a party upon good cause shown except that in no case shall a hearing occur in the absence of a child's attorney. If a child has a guardian *ad litem* and legal counsel, both attorneys shall be present.
>
> (2) *Exclusion from Proceedings*. A party may be excluded from a proceeding only for good cause shown. If a party is so excluded, counsel for the party shall be permitted to be present.

Pa.R.J.C.P. 1128(A)-(B). The comment to this Rule emphasizes that "[i]n no case is a proceeding to occur in the absence of a child's attorney." Pa.R.J.C.P. 1128 at cmt. With respect to *in camera* proceedings, the Rules similarly provide that "*in camera* proceedings are to be recorded and each party's attorney shall be present." Pa.R.J.C.P. 1134.

Viewed collectively, the Rules evince that: (1) a child's GAL and legal counsel may not be excluded from dependency proceedings; and (2) while parties may be excluded from *in camera* interviews, counsel may not be similarly excluded. *See* Pa.R.J.C.P. 1128(A)-(B), 1134. This Court has explained that, at a minimum, due process requires that counsel for all parties be present for such *in camera* dependency proceedings. ***See In Interest of***

*Leslie H.*, 478 A.2d 876, 878 (Pa. Super. 1984), *recognized as superseded on separate grounds*, *In re M.T.*, 607 A.2d 271, 280 (Pa. Super. 1992).

Viewing the actions of the trial court in light of these provisions, we readily conclude that the *in camera* interview conducted by the trial court on July 12 was legally erroneous. Specifically, the trial court precluded Child's counsel from participating in the questioning of Child at a critical juncture in the dependency proceedings, *i.e.*, the final opportunity for Child to address the trial court prior to its ruling on reunification and discharge. This procedure deprived Child of the advice and support of the legal representation that was conferred upon him at all stages of the dependency proceedings as a matter of law. *Accord* 42 Pa.C.S.A. §§ 6337, 6337.1(a). Furthermore, the trial court violated Child's rule-based rights to have his counsel present during the entirety of these proceedings. *See* Pa.R.J.C.P. 1128(A)-(B), 1134.

Based upon the foregoing, we conclude that an error occurred in the above-captioned case implicating child's rights to counsel in the dependency context. The question remains, however, as to whether such an error may be considered harmless or is structural in nature. A review of *L.B.M.* is merited. Therein, our Supreme Court considered the nature of a child's entitlement to legal counsel in TPR proceedings pursuant to the Adoption Act, 23 Pa.C.S.A. §§ 2101, *et seq*. *See* 23 Pa.C.S.A. § 2313(a). A majority of the High Court concluded that Section 2313(a) "requires the appointment of counsel who serves the child's legal interests in contested involuntary TPR proceedings."

*L.B.M.*, *supra* at 180. The Supreme Court also determined that the failure to appoint counsel "compromises the framework of the proceedings and constitutes a structural error," which is not subject to harmlessness analysis. *Id*. at 183.

The High Court noted in *L.B.M.* that, in dependency matters like the case at bar where a "child's best interests and legal interests diverge," the appointment of separate counsel to represent a child's legal and best interests may be appropriate. *See id*. at 175 n.4. In *In re J'K.M.*, 191 A.3d 907, 913 (Pa. Super. 2018), this Court deemed *L.B.M.* to be "instructive" in evaluating a child's right to counsel in dependency proceedings. Specifically, we held that a "divergence of opinions between [a child's] legal interests and best interests presents a conflict" that necessitates the appointment of separate counsel pursuant to Rule 1151. *Id*. at 915. Several non-precedential holdings of this Court have subsequently interpreted *J'K.M.* as having extended the application of *L.B.M.* to dependency actions, generally. *See Interest of J.G.*, 2019 WL 6840669, at *1 n.2 (Pa. Super. Dec. 16, 2019); *Interest of A.A.*, 2019 WL 5431783, at *1 n.5 (Pa. Super. Oct. 23, 2019); *Interest of L.A.P.*, 2019 WL 4131952, at *2 n.5 (Pa. Super. Aug. 30, 2019); *Interest of J.B.*, 2019 WL 4052489, at *1 n.2 (Pa. Super. Aug. 28, 2019).

This Court has stopped short, however, of explicitly referring to a deprivation of counsel in a dependency proceeding as a "structural error." *Compare L.B.M. supra* at 183 *with J'K.M.*, *supra* at 915. While *J'K.M.* fully

- 13 -

supports a conclusion that **L.B.M.** is pertinent in dependency cases, no Pennsylvania court has yet explicitly found that a violation of a child's right to counsel in the dependency context constitutes structural error.[7] **Cf. J'K.M.**, **supra** at 915 (holding that a "divergence of opinions between [a child's] legal interests and best interests presents a conflict as contemplated in **L.B.M.**" and reversing without addressing harmlessness).

In **L.B.M.**, our Supreme Court adopted the concept of structural error from criminal law, pursuant to which "denial of counsel is deemed a structural error, requiring reversal without the need to demonstrate prejudice." **L.B.M.**, **supra** at 182. The High Court reasoned as follows:

> A structural error is defined as one that affects the framework within which the trial proceeds, rather than simply an error in the trial process itself. Structural errors are not subject to harmless error analysis. Generally, denial of counsel is a structural error, although such error usually stems from deprivation of a constitutional right to counsel. Here, by contrast, the right to counsel is statutory. Nonetheless, we do not find that distinction to be determinative. The same concerns are evident regardless of the derivation of the right. Whether the right to counsel is conferred by constitution or statute, the right having been conferred must be protected.

_____

[7] In **Interest of D.G.**, 241 A.3d 1230, 1240 n.7 (Pa. Super. 2020), this Court noted in passing that Pennsylvania courts have not recognized a child's "non-waivable statutory right to separate legal counsel" in dependency proceedings. However, we ultimately declined to address this issue on the merits in **D.G.** based upon the parties' failure to explore the distinctions between the dependency and TPR matters. **See id.** This passing dicta does not undermine the analysis presented above. **See**, **e.g.**, **GM Berkshire Hills LLC v. Berks County Board of Assessment**, 290 A.3d 238, 253 (Pa. 2023) ("[D]icta is an opinion by a court that is not essential to the decision, which has not precedential value even when it relates to a question that is directly involved, briefed, and argued by counsel, and even passed on by the court.").

> In criminal and TPR cases alike, critical rights are at stake. With respect to the former, the framers of our Constitutions, and the courts interpreting those charters, have determined that counsel was required to ensure that liberty interests and process rights are protected. With respect to the latter, our General Assembly has decided that counsel for the child is required because of the primacy of children's welfare, the fundamental nature of the parent-child relationship and the permanency of termination. The legislature has codified a process that affords a full and fair opportunity for all of the affected parties to be heard and to participate in a TPR proceeding. The denial of mandated counsel compromises the framework of the proceedings and constitutes a structural error. Further . . . harmless error analysis would require speculation after the fact to evaluate the effect of the lack of appointed counsel, effectively requiring proof of a negative. For all of these reasons, we hold that the failure to appoint counsel for a child involved in a contested, involuntary termination of parental rights proceeding is a structural error and is not subject to harmless error analysis.

*Id.* at 183 (internal citations and quotation marks omitted).

The same justifications that animated our Supreme Court in *L.B.M.* apply with equal force in the instant controversy. Here and as discussed above, Child has a clear, statutory entitlement to counsel at "all stages" of the dependency proceedings pursuant to Sections 6337 and 6337.1(a). *See* 42 Pa.C.S.A. §§ 6337, 6337.1(a). The Rules similarly provide that Child's statutorily mandated counsel must be present at all dependency proceedings, including those conducted *in camera*. *See* Pa.R.J.C.P. 1128(A)-(B), 1134. As our Supreme Court has explained above, the ultimate source of a litigant's entitlement to counsel does not determine the extent of protections to which they are subject. *See L.B.M.*, *supra* at 183. Rather, once the right to counsel has been conferred, it must be appropriately safeguarded. *See id.*

Concomitantly, we recognize that dependency proceedings do not necessarily implicate the same gravity of consequence present in TPR or criminal matters, *i.e.*, termination of parental rights or loss of personal physical liberty. Nonetheless, "critical rights" are still at issue in dependency proceedings, including the appropriateness of the Commonwealth's coercive intervention into a family's life, the physical and legal custody of the subject child, and the parents' respective fitness to obtain or retain such custody. ***See In re Rinker***, 117 A.2d 780, 783 (Pa. Super. 1955) ("It is a serious matter for the long arm of the state to reach into a home and snatch a child from its [parent]. It is a power which a government dedicated to freedom for the individual should exercise with extreme care[.]").

These concerns may not be as weighty as those at issue in criminal or TPR litigation, but we cannot conclude that the consequences of dependency proceedings are materially less sufficient to enable us to distinguish such matters from the reasoning of ***L.B.M.*** quoted above. Given that our General Assembly has provided a statutory entitlement to counsel for children in dependency litigation, any disparity between dependency and TPR proceedings are a distinction without a difference with respect to transgressions that deny a child's right to counsel.

The instant case also does not concern a failure to appoint counsel. As detailed above, there is no question that the trial court appropriately

appointed separate counsel to represent Child's legal and best interests.[8] However, this Court has extended the application of *L.B.M.* in TPR matters to situations in which counsel was appointed to represent multiple children in conformity with Section 2313(a) but was subsequently and erroneously excluded from participating in the TPR proceedings. *See Interest of H.H.N.*, 296 A.3d 1258, 1265-67 (Pa. Super. 2023) (holding trial court's exclusion of appointed counsel from TPR hearing "deprived [the children] of their statutory right to counsel," which was structural error requiring *vacatur* of decrees regardless of whether counsel was present during all other proceedings).

A similar situation confronts us in the case *sub judice*, wherein the trial court properly appointed counsel to represent Child, but then denied Child the benefit of that representation by excluding his attorneys from participating in a critical portion of the underlying dependency proceedings. Accordingly, we believe that *L.B.M.* should also apply under the analogous facts of the instant case. *Accord H.H.N.*, *supra* at 1265-67. Therefore, we conclude the trial court's exclusion of Child's attorneys from Child's testimony constitutes

---

[8] We note that no party has challenged the trial court's decision to appoint a separate GAL and legal counsel in this matter. Consistent with our Supreme Court's guidance on such matters, we decline to raise this issue *sua sponte*. *See*, *e.g.*, *In re Adoption of K.M.G.*, 240 A.3d 1218, 1238 (Pa. 2020) ("[W]e do not authorize *sua sponte* review of whether GAL/[c]ounsel had a conflict in representing both a child's legal interest and best interests or whether counsel placed the child's preferred outcome on the record, as those fact-intensive, nuanced determinations are not well-suited for *sua sponte* appellate review.").

structural error that requires we vacate the trial court's July 12, 2023 order without considering harmless error.[9] *See id.*; *L.B.M.*, *supra* at 182-83.

To summarize, the trial court committed legal error by preventing Child's attorneys from participating in Child's *in camera* interview in contravention of Pa.R.J.C.P. 1128(A)-(B) and 1134. *See also Leslie H.*, *supra* at 878. This error deprived Child of the legal representation statutorily guaranteed him at all stages of the dependency proceedings pursuant to 42 Pa.C.S.A. §§ 6337 and 6337.1(a). Conjunctively considering the holdings in *L.B.M.*, *H.H.N.*, and *J'K.M.*, this violation of Child's right to counsel

_____

[9] Child also relies upon the trial court's exclusion of counsel from the *in camera* interview conducted on May 10, 2023. We discern, however, that no contemporaneous objection was entered by Child's GAL, who was simultaneously representing both Child's legal and best interests at that point in time. *See* N.T., 5/10/23, at 41-42; Pa.R.J.C.P. 1151(A). Although we ultimately determine that the trial court's exclusion of Child's counsel from the July 12, 2023 proceedings constitutes structural error pursuant to *L.B.M.*, that specific aspect of Child's claim was properly preserved via a timely objection in the trial court. *See* N.T., 7/12/23, at 38-42. We emphasize that structural error and non-waivability are separate legal concerns. *See In re T.S.*, 192 A.3d 1080, 1087 (Pa. 2018) ("[S]tructural error means that no harmless-error analysis is relevant; however, it does not always imply non-waivability.").

We need not definitively address whether claims concerning alleged deprivations of counsel in dependency proceedings are non-waivable. *But cf. T.S.*, *supra* at 1087 (holding that a claim concerning the trial court's failure to appoint counsel pursuant to *L.B.M.* in termination proceedings was non-waivable). Given the nature of our holding, we decline to consider this portion of Child's argument as moot. *See*, *e.g.*, *Printed Image of York, Inc. v. Mifflin Press, Ltd.*, 133 A.3d 55, 59 (Pa. Super. 2016) ("An issue before a court is moot when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy.") (internal citation and quotation marks omitted).

constitutes structural error and, thus, requires *vacatur* irrespective of any purported harmless error analysis. ***See***, ***e.g.***, ***L.B.M.***, ***supra*** at 182-83; ***H.H.N.***, ***supra*** at 1265-67; ***J'K.M.***, ***supra*** at 913-15. Therefore, we must vacate the trial court's July 12, 2023 order and remand for a new hearing.

We will also briefly address Child's arguments concerning the transcripts of Child's testimony on May 10, 2023. The certified record reflects that Child's legal interests counsel has been unable to obtain a transcript of this proceedings due to the trial court having sealed the testimony, despite a timely request advanced by Child's legal interests counsel. ***See*** N.T., 7/12/23, at 40. The trial court confirms as much in its Rule 1925(a)(2)(ii) opinion. ***See*** Trial Court Opinion, 8/4/23, at 21 ("The May 10, 2023 interview was recorded, but remained sealed."). Due process requires that *in camera* interviews conducted in dependency proceedings be transcribed. ***See Leslie H.***, ***supra*** at 878. The trial court's decision to seal Child's testimony in a fashion that precludes transcription has denied access to "relevant information" that could impact these proceedings. ***See id***. Accordingly, we also direct the trial court to take appropriate action to unseal the transcript of its May 10, 2023 interview of Child such that it is available for transcription. ***Id***.

Given the nature of our holding, we do not address Child's second claim.

Based upon the foregoing, we vacate the trial court's July 12, 2023 order and remand for a new permanency hearing consistent with this opinion. At this new hearing, Child's attorneys, along with counsel for all other parties,

shall be permitted to fully participate in the proceedings, including the questioning of Child. Furthermore, the trial court shall make available for transcription the recording of Child's *in camera* interview on May 10, 2023.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>1/22/2024</u>