J-S24003-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF A.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: K.A.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 146 WDA 2025 |

Appeal from the Order Entered January 9, 2025
In the Court of Common Pleas of Washington County Orphans' Court at
No(s):  OC-2024-00892

| | | |
|---|---|---|
| IN RE: ADOPTION OF A.J.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: K.A.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 147 WDA 2025 |

Appeal from the Order Entered January 9, 2025
In the Court of Common Pleas of Washington County Orphans' Court at
No(s):  OC-2024-00893

| | | |
|---|---|---|
| IN RE: ADOPTION OF M.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: K.A.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 148 WDA 2025 |

Appeal from the Order Entered January 9, 2025
In the Court of Common Pleas of Washington County Orphans' Court at
No(s):  OC-2024-00890

| | | |
|---|---|---|
| IN RE: ADOPTION OF I.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

J-S24003-25

:
:
:
APPEAL OF: K.A.L., MOTHER    :
:
:
:
:
:    No. 149 WDA 2025

Appeal from the Order Entered January 9, 2025
In the Court of Common Pleas of Washington County Orphans' Court at
No(s):  OC-2024-00891

BEFORE:  NICHOLS, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY NICHOLS, J.:                **FILED: December 3, 2025**

Appellant K.A.L. (Mother) appeals from the orders granting the petition filed by Washington County Children and Youth Social Service (the Agency) which involuntarily terminated her parental rights to A.J.L,[1] A.L., M.L., and I.L. (collectively, Children), her minor children aged twelve to six years old respectively at the time of order entry.[2,3]  After careful review, we are constrained to vacate and remand with instructions.

By way of background, the Agency removed Children from the care of Mother and An.L. (Father), Children's father, and placed them in foster care

---

[1] We note that the initials "A.J.L." do not appear to correctly reference this child's actual name.  For purposes of this appeal, we note that "A.J.L." denotes the oldest child in these consolidated appeals, born in December of 2011, and the subject child at Docket No. O.C. 2024-0893.

[2] Father's parental rights to Children were terminated on the same date within the same orders.  Father filed separate appeals from these orders, which we address in a separate memorandum.

[3] This Court consolidated Mother's appeals *sua sponte* on April 1, 2025.  **See** Order, 4/1/25.

- 2 -

on March 31, 2022. *See* Trial Ct. Order & Op., 1/9/25, at 3.[4] Children were adjudicated dependent on June 7, 2022. *Id.* On April 4, 2024, the Agency requested to change Children's dependency goals from reunification to adoption, which was subsequently granted at a permanency review hearing attended by Father and Mother on May 3, 2024. *Id.* at 4; *see also* Trial Ct. Order, 5/3/24, at 2. Within the same permanency review order, the trial court also directed that "[a] permanency review hearing shall be scheduled on August 21, 2024 . . . in front of hearing officer Erin Dickerson." Trial Ct. Order, 5/3/24, at 5 (some formatting altered). No order related to any type of dependency proceeding on August 21, 2024 appears in the certified record for this matter. However, the record establishes that on August 21, 2024, the

---

[4] As the certified records for these consolidated appeals each contain certain trial court orders that are identical or substantially identical for all four Children, unless otherwise indicated the orders referenced herein convey the same directive(s) for Children's cases at docket numbers OC-2024-00893, OC-2024-00892, OC-2024-00891, and OC-2024-00890.

trial court conducted an *in camera* interview with all four Children, attended by Jessica Johnson, Esq., the guardian *ad litem* (GAL) for Children.[5, 6]

On June 11, 2024, the Agency filed petitions to involuntarily terminate Mother's and Father's parental rights to Children pursuant to 23 Pa.C.S. §§ 2511(a)(1), (a)(2), (a)(5), (a)(8) and (b). **See** Trial Ct. Order & Op., 1/9/25, at 4, 6. On that same date, the trial court appointed Attorney Johnson as Children's GAL in the termination of parental rights (TPR) proceedings and, further, appointed legal counsel for Father and Mother; appointed Benita Thompson, Esq., to represent A.J.L.; and appointed Nicholas Logan, Esq., to represent A.L. **See** Docket Nos. OC-2024-00893, OC-2024-00892, OC-2024-00891, and OC-2024-00890, Trial Ct. Orders, 6/11/24. The trial court amended the appointment of counsel for A.L. to Christine Guthrie, Esq., on June 17, 2024. **See** Docket No. OC-2024-00892, Trial Ct. Order, 6/17/24.

---

[5] The transcript of the trial court's *in camera* interview with Children on August 21, 2024 was not included in the certified record. Because the trial court cited to the transcript in its opinion and Mother's claims relate directly to this *in camera* proceeding, we directed the parties to supplement the record with "the notes of testimony from that hearing and any relevant order(s)." Order, 8/8/25. The trial court supplemented the certified record with the transcript of the *in camera* interview and we note that the transcript was filed with the trial court on August 21, 2025. **See** N.T., 8/21/24.

[6] The record refers to the attorney who served as Children's GAL both as "Jessica Roberts, Esq." and "Jessica Johnson, Esq." **See**, **e.g.**, N.T., 8/21/24, at 1, 21; N.T., 9/24/24, at 2, 5; Trial Ct. Orders, 6/11/24. The certified docket and the certificate of service for the trial court opinion filed January 9, 2025 refer to Children's GAL as "Jessica Johnson, Esq." We refer to "Jessica Johnson, Esq." herein based on the most recent references to the name of Children's GAL.

The trial court did not appoint legal counsel for M.L. and I.L. in these series of orders. In the June 11, 2024 order for M.L.'s TPR case, immediately below the three lines of text appointing counsel for Mother and Father and a GAL for M.L., appears the text: "Legal Counsel for the Minor Child: _____." **See**, Docket No. OC-2024-00890, Trial Ct. Order, 6/11/24. In the June 11, 2024 order for I.L.'s TPR case, immediately below the lines of text appointing counsel for Mother and Father and a GAL for I.L. appears the text, "Legal Counsel for the Minor Child: N/A." **See**, Docket No. OC-2024-00891, Trial Ct. Order, 6/11/24.

The trial court heard Agency's termination of parental rights (TPR) petitions on September 24, 2024. At this hearing, Attorney Johnson served as GAL for all four Children, Attorney Guthrie represented A.L. as his legal counsel, and Attorney Thompson represented A.J.L. as his legal counsel. **See** N.T., 9/24/24, at 5.

At the outset of the TPR hearing, Mother's counsel asked the trial court to "speak with [Children] prior to making decision on this matter, just to fully appreciate whether the positions of child counsel are accurate[,]" because Mother believed that Children may have had "a fundamental misunderstanding of what adoption means" and that "they wanted to be adopted by [M]other." N.T., 9/24/24, at 6. In response, Attorney Johnson stated:

> Attorney Johnson: Your Honor, you and I met at the time [with Children] and discussed the issue of adoption. You've done that.

The Court: We did. To the extent that people's feelings about such an intimate, complex matter can be, and may change. So I mean, I have no problem speaking to [Children]. But to the extent that needs to take place right now, I mean, I don't know. I mean, that will take place at any time during the proceeding. Ms. Johnson, are you opposed to me talking to them?

Attorney Johnson: Again?

\* \* \*

Attorney Johnson: . . . [The trial court] has had at-length discussions with [Children], and I think these issues were addressed with them in a manner which they understood. So I would oppose [Children] being interviewed a second time for the same purposes.

\* \* \*

The Court: Let's proceed, and we'll see how things go.

N.T., 9/24/24, at 6-8.

The trial court proceeded to hold a complete TPR hearing, including taking testimony from Dr. Neil Rosenblum, a psychologist who had worked with the family; Julie Bower, an Agency caseworker currently in charge of Children's cases; Megan Hedlund, a family visitation supervisor; and Mother. *See* N.T., 9/24/24. For the remainder of the hearing, neither the trial court nor any party revisited Mother's request for the court to speak with Children again about their wishes regarding adoption and no party referenced any statements made by Children at a prior dependency proceeding. *See id.* At the conclusion of the hearing, the trial court indicated that it would issue a written order and opinion. *See id.* at 317-19.

On January 9, 2025, the trial court entered an order terminating Mother's and Father's parental rights to Children. In its accompanying

- 6 -

opinion, the trial court concluded that the Agency had established grounds for termination at 23 Pa.C.S. §§ 2511(a)(2), (a)(5), and (a)(8) and that termination would "best serve the needs and welfare of [] Children under Section 2511(b)." **See** Trial Ct. Order & Op., 1/9/25, at 6-31. The trial court also stated that Children "expressed that they feel happy, comfortable and safe in their current home as well as a desire to continue living with [their foster parents] and to stay where they are." **Id.** at 30 (citing to N.T., 8/21/24).

Mother filed a timely notice of appeal and both Mother and the trial court complied with Pa.R.A.P. 1925.[7]

On appeal, Mother raises the following claims:

1. Did the trial court err as a matter of law and/or abuse its discretion when it relied upon a meeting between the court, [C]hildren, and the [GAL] to establish [C]hildren's wishes

---

[7] The trial court initially appointed Renee Colbert, Esq., as Mother's appellate counsel. **See** Trial Ct. Order, 1/28/25. On March 12, 2025, the trial court subsequently appointed Alexis Cross, Esq., as Mother's appellate counsel. **See** Trial Ct. Order, 3/12/25. On March 18, 2025, this Court, noting that this matter is a Children's Fast Track appeal pursuant to Pa.R.A.P. 102 and Mother had not yet filed a Pa.R.A.P. 1925(a)(2) statement of errors, directed Mother to file her Rule 1925(a)(2) statement by March 28, 2025. **See** Order, 3/18/25. Mother timely complied on March 24, 2025 and in Mother's Rule 1925(a)(2) statement, Attorney Cross notes that she was appointed "after the untimely death of prior court-appointed appellate counsel of record." Mother's Concise Statement, 3/24/25.

The trial court also asked that this Court consider its order and opinion entered January 9, 2025 as its Rule 1925(a) opinion. **See** Trial Ct. Order, 2/12/25. On April 2, 2025, the trial court filed a supplemental Rule 1925(a) opinion. **See** Trial Ct. Op., 4/2/25.

regarding adoption where [legal] counsel had been appointed for two [of the four C]hildren?

2. Did the trial court err as a matter of law and/or abuse its discretion by failing to hold an *in camera* hearing with [C]hildren upon the pre-trial motion of Mother's counsel at the [TPR] hearing at which all counsel would be present?

3. Did the trial court err as a matter of law and/or abuse its discretion when it relied *sua sponte* on a transcript dated August 21, 2024, which was neither part of the [TPR] proceedings nor admitted into evidence of same as a party's exhibit?

4. Did the trial court err as a matter of law and/or abuse its discretion by failing to fix a time for an *in camera* hearing with the [C]hildren and failing to give notice of same?

5. Did the trial court err as a matter of law and/or abuse its discretion in terminating Mother's parental rights?

Mother's Brief at 5-6 (some formatting altered).

Mother's first four issues are related; therefore, we discuss them together. Mother argues that "[t]he trial court erred when it relied upon [the *in camera* interview of August 21, 2024] **to establish [] Children's wishes** for which no evidence was provided apart from the statement of the [GAL] and concurrence of same by the trial court itself." ***Id.*** at 29 (citing N.T., 9/24/24, at 6-7) (emphasis in original). Mother contends that the trial court erred because it "failed to hold a[ second] *in camera* hearing with [Children] upon the pre-trial motion of Mother's trial counsel at which all counsel would be present." ***Id.*** at 32 (citing N.T., 9/24/24, at 6-7).

Mother asserts that she did not receive notice of the August 21, 2024 *in camera* interview and that the "procedural histories of the dependency matters and orphans' court matters do not establish notice" was given to

Mother.  *Id.* at 29 (some formatting altered).  Mother argues that the May 3, 2024 permanency review order provides notice of a permanency review hearing in front of a hearing officer on August 21, 2024, but does not provide notice of an *in camera* interview of Children by a judge on that same date. *Id.* at 35-36.  Further, Mother notes that neither the trial court's order scheduling this interview nor a transcript of the interview was admitted into evidence at the TPR hearing.  *Id.* at 29.

Due to these procedural defects, Mother contends that she was "simultaneously **preclude[d] the opportunity** to have her interests represented at the **August 21, 2024**, *in camera* proceeding and **den[ied] knowledge** of the contents of the transcript **and notice** that the transcript would be utilized by the trial court."  *Id.* at 34-35 (emphases in original). Therefore, Mother argues that the trial court violated her federal and state constitutional due process rights when it relied upon the August 21, 2024 transcript to terminate Mother's parental rights, as the transcript was "**not a fact of record**[,]" and when it denied Mother's pre-trial motion to interview Children *in camera* in the presence of counsel to ascertain Children's wishes regarding adoption.  *Id.* at 30-33 (citing U.S. Const. amend. XIV, § 1 and Pa. Const. art. I, §§ 1, 9) (emphasis in original).[8]

_____

[8] Mother also argues that the trial court erred by conducting an *in camera* interview with Children on August 21, 2024 in a manner that "produced a form of 'hearsay,'" that is, "an out-of-court statement offered for the truth of the matter."  *Id.* at 42-43.  Accordingly, Mother contends, "reliance on this
*(Footnote Continued Next Page)*

We review TPR orders to determine

> whether the [order or] decree of the termination court is supported by competent evidence. . . . and require[] appellate courts to accept the findings of fact and credibility determinations of the [trial] court if they are supported by the record, but [] do[] not require the appellate court to accept the [trial] court's inferences or conclusions of law. That is, if the factual findings are supported, we must determine whether the [trial] court made an error of law or abused its discretion.

*In re Adoption of G.W.*, 342 A.3d 68, 83 (Pa. Super. 2025) (*en banc*) (citations omitted).

Regarding the right to counsel in dependency and in termination proceedings, both the Juvenile Act and the Adoption Act recognize that a parent has a right to counsel during these types of proceedings. *See* 42 Pa.C.S. § 6337; *see also* 23 Pa.C.S § 2313(a.1). The Rules of Juvenile Court Procedure further direct that *in camera* proceedings in matters involving juveniles "be recorded and each party's attorney shall be present." Pa.R.J.C.P. 1134.

In *In re Adoption of C.A.S.*, 166 A.3d 353 (Pa. Super. 2017), this Court held that, pursuant to 23 Pa.C.S. § 2313(a.1), "[p]arents in involuntary termination proceedings have a constitutionally-protected right to counsel" and, accordingly, vacated that TPR order and remanded for a new hearing because the trial court "erred by failing to continue the termination

---

meeting[]" by the trial court "is an abuse of discretion." *Id.* at 44. Because we resolve this appeal on the basis of Mother's other claims, we need not address this argument.

proceedings so that [the father] could petition for court-appointed counsel."
***C.A.S.***, 166 A.3d at 356-57 (citations omitted).

In ***In re Adoption of L.B.M.***, 161 A.3d 172 (Pa. 2017), our Supreme Court reviewed the right to counsel "for all of the affected parties[,]" as set forth in Section 2313 in the Adoption Act. ***L.B.M.***, 161 A.3d at 182-83. Applying Section 2313 to the facts before it, the ***L.B.M.*** Court held that "the failure to appoint counsel for a child [in a TPR] proceeding is structural error and is not subject to harmless error analysis." ***Id.*** at 183; ***see also In re Adoption of A.C.M.***, 333 A.3d 704, 708 (Pa. Super. 2025). Our Supreme Court determined that the appropriate remedy for that error was "remand for a new TPR proceeding following the appointment of counsel." ***L.B.M.***, 161 A.3d at 183; ***see also A.C.M.***, 333 A.3d at 708-09 (holding that the structural error of failing to appoint separate legal counsel for the children required vacation and remand).

In ***In re J.F.***, 308 A.3d 1252 (Pa. Super. 2024), this Court noted that "parties in dependency proceedings are entitled to representation by legal counsel at all stages of any proceedings as a matter of statutory law" and held that it was error to hold an *in camera* interview with a dependent child "without [the child's] attorneys present." ***J.F.***, 308 A.3d at 1257, 1259 (citing 42 Pa.C.S. §§ 6337, 6337.1) (some formatting altered). The ***J.F.*** Court explained that the exclusion of the child's GAL and legal counsel "implicat[ed] [the] child's rights to counsel in the dependency context[,]" violating provisions of both the Juvenile Act and the Rules of Juvenile Court Procedure and was,

accordingly, legal error. *Id.* at 1258 (citing 42 Pa.C.S. §§ 6337, 6337.1(a); Pa.R.J.C.P. 1128(A)-(B); Pa.R.J.C.P. 1134). Guided by *L.B.M.*, the *J.F.* Court held that a child has the right "to have [] counsel present during the entirety of [dependency] proceedings[]" and the exclusion of a child's counsel from an *in camera* interview "constitutes structural error" that is not amenable to a harmless error analysis. *Id.* at 1258-60 (citing *L.B.M.*, 161 A.3d at 182-83; Pa.R.J.C.P. 1128(A)-(B); Pa.R.J.C.P. 1134).

Lastly, in *In re M.S.*, 1938 EDA 2023, 2024 WL 2106235 (Pa. Super. filed May 10, 2024) (unpublished mem.), the father appealed from an order adjudicating his child dependent and removing the child from his care, arguing that the trial court had violated the "Rules of Juvenile Court Procedure[,] as well as his due process rights, by excluding his counsel from participating in an *in camera* interview of [his child]." *M.S.* 2024 WL 2106235 at *1, 3.[9] The *M.S.* Court noted that, "at a minimum, due process demands that counsel for all parties be present for [] *in camera* dependency proceedings[]" because the exclusion of counsel "denie[s] relevant information" to the parent and violates the parent's right "to confront and cross-examine witnesses[.]" *Id.* at *4 (citations omitted). Further, this Court disagreed with the *M.S.* trial court's rationale that it could exclude "the parties' counsel at [the child's] request to minimize [the child's] trauma, anxiety, and fear[]" during the *in camera* interview. *Id.* at *4. The *M.S.* Court agreed that the father's right to counsel

_____

[9] We may cite to non-published decisions of this Court filed after May 1, 2019 for their persuasive value pursuant to Pa.R.A.P. 126(b).

had been violated and, therefore, vacated the dependency order and remanded for a new hearing. *Id.* at *1, 5.

Here, the trial court explained:

Pursuant to 42 Pa.C.S.[] § 6351, "[i]n any permanency hearing held with respect to the child, the court shall consult with the child regarding the child's permanency plan, including the child's desired permanency goal, in a manner appropriate to the child's age and maturity." 42 Pa.C.S.[] § 6351(e)(1). Thus, the meeting that occurred was one required by statute, and a court stenographer transcribed [] Children's words.

* * *

The trial court understands [] Pa.R.J.C.P. 1134 states "Upon motion by any party or on the court's own motion, *in camera* proceedings are to be recorded and each party's attorney shall be present." The record, however, does not reflect that Mother's counsel, nor Father's counsel, moved to be present during the interview[s] with [] Children during the [August 21, 2024] permanency review hearing.

Nevertheless, to the extent the Superior Court finds that this court did err in its reliance upon the meeting [with Children], this court respectfully requests that the [Superior] Court consider this error to be harmless.

Trial Ct. Op., 4/2/25, at 4-6 (some formatting altered).

Based on our review of the record, we disagree with the trial court's conclusions. The record does not reflect that the trial court provided prior notice of its intention to conduct an *in camera* interview with Children on August 21, 2024. *See, e.g.,* Trial Ct. Order, 5/3/24, at 5. Further, only GAL was present during this *in camera* interview with Children, and there was no

- 13 -

legal counsel present to represent Mother, A.L., or A.J.L. at the proceeding.[10] *See* N.T., 8/21/24. The record does not reflect, nor does the Agency argue, that these parties waived their right to have counsel present. Further, while the trial court notes that Mother's counsel did not "move[] to be present" at the *in camera* interview, Rule 1134 provides that the parties' counsel "shall be present" at *in camera* proceedings. *See* Pa.R.J.C.P. 1134. Accordingly, we hold that Mother's counsel was not required to obtain permission to be present at the *in camera* interview; rather, it was the trial court's duty to ensure that the parties' counsels were present at the interview. *See J.F.*, 308 A.3d at 1258-59; *see also M.S.* 2024 WL 2106235 at *1, 5.[11]

The exclusion of legal counsel for Mother, A.L., and A.J.L. from the trial court's *in camera* interview with Children on August 21, 2024 violated Pa.R.J.C.P. 1134's mandate that "each party's counsel shall be present" at *in camera* proceedings. *See* Pa.R.J.C.P. 1134; *see also* 42 Pa.C.S. § 6337; 23 Pa.C.S § 2313(a.1). As a result, Mother, A.L., and A.J.L. were deprived of their respective rights to counsel during all stages of the proceedings. *See* 42 Pa.C.S. §§ 6337, 6337.1(a); 23 Pa.C.S §§ 2313(a), (a.1); *see also L.B.M.*, 161 A.3d at 183 (noting that our "legislature has codified a process

---

[10] As noted above, the trial court appointed separate counsel for A.L. and A.J.L. prior to the August 21, 2024 *in camera* interview.

[11] Even if Pa.R.J.C.P. 1134 required Mother's counsel to ask permission to attend the *in camera* interview (which it does not), the record does not establish that Mother's counsel had prior notice of the *in camera* proceeding to prompt such a request.

that affords a full and fair opportunity for all of the affected parties to be heard and to participate in a TPR proceeding"); **J.F.**, 308 A.3d at 1257 (stating that "parties in dependency proceedings are entitled to representation by legal counsel at all stages of any proceedings as a matter of statutory law" (some formatting altered and citation omitted)); **C.A.S.** 166 A.3d at 356-57 (holding that "[p]arents in involuntary termination proceedings have a constitutionally-protected right to counsel" (citation omitted)); **M.S.**, 2024 WL 2106235 at *3-4 (concluding that the trial court violated a parent's due process rights by excluding the parent's counsel from an *in camera* interview of the child).

For these reasons, we agree with Mother that the trial court's decision to conduct an *in camera* interview with Children without Mother's counsel present deprived Mother of her constitutional and statutory right to counsel. **See** U.S. Const. amend. XIV, § 1; Pa. Const. art. I, §§ 1, 9; Pa.R.J.C.P. 1134; 42 Pa.C.S. § 6337; 23 Pa.C.S § 2313(a.1). Further, the exclusion of A.L. and A.J.L.'s counsel likewise deprived these children of their right to counsel. **See** Pa.C.S. § 6337.1(a); 23 Pa.C.S § 2313(a).

Finally, although we recognize that Mother did not raise any claim addressing the right to legal counsel for her other two children, M.L. and I.L., we must address this issue *sua sponte*. **See In re Adoption of K.M.G.**, 240 A.3d 1218, 1224, 1235-36 (Pa. 2020) (holding that appellate courts should review *sua sponte* whether the trial court appointed counsel to represent a child's legal interests in TPR proceedings and, in the event that one attorney was appointed to represent a child's best interests as well as legal interests,

whether the trial court made a determination that there was no conflict between these interests prior to making the appointment).

The Juvenile Act provides for the appointment of counsel for children in dependency proceedings. **See** 42 Pa.C.S. § 6337.1(a) (providing for appointment of legal counsel for child in dependency proceedings). Further, the Adoption Act provides that upon the filing of a TPR petition:

> [t]he court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian *ad litem* to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).

Addressing a child's right to counsel pursuant to Section 2313(a), our Supreme Court has recognized that where "a child's legal interests conflict with the child's best interests, those interests must be represented by separate individuals during the termination proceedings to ensure that the child's legal interests are presented to the [trial] court." **K.M.G.**, 240 A.3d at 1234 (footnotes omitted); **see also id.** at 1236 (concluding that "a single attorney cannot represent a child's best and legal interest if those interests conflict" (citing **In re T.S.**, 192 A.3d 1080, 1082 (Pa. 2018)).

Specifically, the **K.M.G.** Court held that

> [w]here a [trial] court has appointed a GAL/Counsel to represent both the child's best interests and legal interests, appellate courts

should review *sua sponte* whether the [trial] court made a determination that those interests did not conflict. . . .

[T]he [trial] court must determine whether counsel can represent the dual interests before appointing an individual to serve as GAL/Counsel for a child. . . . [A]ppellate courts should verify that the [trial] court indicated that the attorney could represent the child's best interests and legal interests without conflict. . . .

[This] *sua sponte* review evaluate[s] (1) whether the [trial] court appointed counsel to represent the legal interests of the child[] and[,] (2) if the appointed counsel also serves as GAL, whether the [trial] court determined that the child's best interests and legal interests did not conflict.

*Id.* at 1235-36 (citation omitted).

A trial court's failure to "appoint an attorney to represent the child's legal interests, *i.e.,* the child's preferred outcome, . . . constitutes structural error in the termination proceedings." *Id.* at 1224 (citing *T.S.*, 192 A.3d at 1082); *see also In re L.B.M.*, 161 A.3d 172, 183 (Pa. 2017); *In re Adoption of A.C.M.*, 333 A.3d 704, 708 (Pa. Super. 2025). The *L.B.M.* Court determined that the appropriate remedy for such error is to remand for a new proceeding in which the child is represented by legal counsel. *See L.B.M.*, 161 A.3d at 183; *see also A.C.M.*, 333 A.3d at 708-09.[12]

_____

[12] We note that in *T.S.* a TPR order was affirmed – even though the trial court in that matter did not appoint separate legal counsel for the child aside from the GAL – where the subject "child's wishes [could not] be ascertained." *T.S.*, 192 A.3d at 1089. *T.S.* concluded that, where "the preferred outcome of a child is incapable of ascertainment because the child is very young and pre-verbal[,] there can be no conflict between the child's legal interests and his or her best interests[.]" *Id.* at 1092.

Here, the record reflects that, upon the Agency's filing of the TPR petitions, the trial court appointed Attorney Johnson as GAL for all four Children and also appointed separate legal counsel for A.J.L., then aged twelve, and A.L., then aged eleven. *See* Trial Ct. Order, OC-2024-00893, 6/11/24, at 2 (unpaginated); Trial Ct. Order, OC-2024-00892, 6/17/24. However, the trial court did not appoint separate legal counsel for M.L., then aged eight, nor I.L., then aged six. *See* Trial Ct. Order, OC-2024-00891 6/11/24; Trial Ct. Order, OC-2024-00890, 6/11/24. Further, the record does not reflect that the trial court determined whether there was a conflict between M.L.'s and I.L.'s best interests and their legal interests to permit Attorney Johnson to serve as both GAL and legal counsel for M.L. and I.L. *See K.M.G.*, 240 A.3d at 1236.

While a GAL may represent both a child's best interests and legal interests in TPR proceedings, before appointing that GAL to the additional role of child's legal counsel, a trial court must determine that there is no conflict between a child's best interests and his or her legal interests. *See id.* at 1235-36. Here, the trial court did not make an on-the-record determination as to whether there was a conflict between those interests. Therefore, we are constrained to conclude the trial court committed structural error in failing to

appoint legal counsel for M.L. and I.L. ***See id.*** at 1224; ***see also L.B.M.***, 161 A.3d at 183; ***A.C.M.***, 333 A.3d at 708.[13]

Because the right to counsel is a fundamental due process right recognized in both our constitutional and statutory schemes, we conclude that the trial court committed structural error by depriving M.L. and I.L. of this right in the TPR proceedings, and deprived Mother, A.L., and A.J.L. of this right at the August 21, 2024 *in camera* interview, a proceeding that the trial court then relied on to terminate Mother's parental rights. ***See*** U.S. Const. amend. XIV, § 1; ***see also*** Pa. Const. art. I, §§ 1, 9. Where a legal error is structural in nature, it is not amenable to a harmless error review. ***See L.B.M.***, 161 A.3d at 183; ***see also A.C.M.***, 333 A.3d at 708; ***J.F.***, 308 A.3d at 1257; ***M.S.***, 2024 WL 2106235 at *3 ***C.A.S.*** 166 A.3d at 356-57. Accordingly, we must vacate the trial court's TPR orders and remand for a new hearing. ***See L.B.M.***, 161 A.3d at 183; ***see also A.C.M.***, 333 A.3d at 708-09. Notwithstanding our vacatur of the trial court's TPR order of January 9, 2025, we do not disturb the placement of Children in foster care where they have remained since March 31, 2022. ***See*** Trial Ct. Order & Op., 1/9/25, at

---

[13] Given that M.L. and I.L. were eight and six years old respectively at the time of the TPR petition filing, and that the trial court then interviewed M.L. and I.L. at the *in camera* interview of August 21, 2024 to ask about their wishes regarding adoption, the ***T.S.*** presumption – that there is "no conflict between the child's legal interests and his or her best interests" where the child is "very young and pre-verbal" and, accordingly, unable to communicate a preference – clearly does not apply here. ***T.S.***, 192 A.3d at 1089.

3. This will maintain the status quo while the trial court addresses the TPR issues consistent with this memorandum.

Therefore, we vacate the TPR orders and remand for a new hearing, consistent with this memorandum, upon remittal of the record.[14, 15]

Termination orders vacated. Remanded for new hearings on termination petitions. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/3/2025

---

[14] Because we resolve this appeal based on Mother's procedural due process claims we need not address Mother's arguments that she suffered prejudice due to the trial court's denial of her request to interview Children at the TPR hearing, coupled with the court's reliance on Children's statements from the August 21, 2024 *in camera* interview to terminate her parental rights. **See** Mother's Brief at 23-28; Trial Ct. Order & Op., 1/9/25, at 30. Likewise, we need not address Mother's claim regarding the sufficiency of Agency's evidence in support of termination.

[15] We remind the trial court and counsel that "compliance with **K.M.G.** should be prominently featured in the trial court's opinion and the briefs on appeal. This Court should not [need to] page through a lengthy record hoping to find evidence of compliance." **A.C.M.**, 333 A.3d at 709 n.7 (citation omitted).