J-S42019-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.T., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1938 EDA 2023 |

Appeal from the Order Entered June 27, 2023
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No: CP-51-DP-0000450-2023

BEFORE: BOWES, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY STABILE, J.:                    **FILED MAY 10, 2024**

J.T. ("Father"), files this appeal from the June 27, 2023 order entered with respect to his daughter, M.S. ("Child"), born in January 2016, which adjudicated Child dependent and found it in her best interest and welfare to be removed from the home of A.S ("Mother").[1]  After careful review, we conclude that the trial court violated Father's rule-based rights and due process rights by excluding his counsel from Child's *in camera* interview. Thus, we vacate and remand for further proceedings consistent with this memorandum.

We glean the following factual and procedural history of this matter from the certified record.  This family became known to the Philadelphia

---

[1] Mother did not file a separate appeal or participate in the instant appeal.

Department of Human Services ("DHS") as a result of a General Protective Services ("GPS") report that was filed on February 3, 2023, which involved concerns of substance abuse by Mother. Specifically,

> The report alleged that [Child] was at school. [Child] had an early dismissal. An[] unauthorized person was trying to pick [Child] up from school. Since that person was unauthorized, Mother was contacted in order to pick her up herself.
>
> Once Mother arrived, [there were] concerns of Mother being intoxicated at the school. And eventually . . . Mother had a friend to help assist her with [Child]. . . .

N.T., 6/27/23, at 13. During a visit with Mother that afternoon, DHS described Mother as being "combative" and refusing to be forthcoming with information about Father. *See id.* at 16-17, 20. As a result, DHS instituted, and Mother agreed to, an out-of-home safety plan with a maternal cousin ("initial safety plan caretaker"). *See id.* at 22-23. DHS then transferred the case to the Community Umbrella Agency ("CUA") for ongoing services.[2] *See id.* at 24, 53. Ultimately, DHS determined this GPS report to be valid and filed a dependency petition as to Child on May 18, 2023. *See id.* at 25.

Then, on June 21, 2023, DHS received a Child Protective Services ("CPS") report with claims that the initial safety plan caretaker's mother had been "beating, hitting and punching, and scratching" Child. *Id.* at 30-31.

_____

[2] DHS sent a letter to Father at his last known address and heard from him in response on February 8, 2023. Father expressed his desire to care for Child. As the matter had already been transferred to the CUA, DHS directed Father to contact the CUA. *See id.* at 23-25.

These allegations surfaced when the initial safety plan caretaker dropped Child off to DHS indicating that she could no longer care for Child. ***See id.***

On the same date, DHS received another GPS report indicating that "Father left Child unattended with her one-year-old brother, half[-]brother, from the paternal side. And she was scared, because he would fall off the couch while she was there, alone with him." ***Id.*** at 31. Child was placed with another maternal relative, pursuant to a safety plan, where Child remained until the time of the subject proceeding. ***See id.*** at 36.

The trial court held an adjudicatory hearing on June 27, 2023. Mother and Father were each present and represented by counsel. Child, then seven and a half years old, was represented by a guardian *ad litem* ("GAL").[3] The Agency presented the testimony of Channel Jones, DHS intake worker; Elaina Sagias, DHS investigator; Kim Sharpton, CUA case manager; and Nelendy Deleon, Community Behavioral Health ("CBH") representative. In addition, the court also interviewed Child *in camera*, outside of the presence of all

---

[3] On May 19, 2023, the court appointed the Support Center for Child Advocates as GAL to represent both Child's best and legal interests. ***See*** 42 Pa.C.S.A. §§ 6311 ("When a proceeding . . . has been initiated alleging that the child is a dependent child . . ., the court shall appoint a [GAL] to represent the legal interests and the best interests of the child. The [GAL] must be an attorney at law."); ***see also*** Pa.R.J.C.P. 1151(a) ("[GAL] for child."). At the close of the subject proceeding, Child's GAL, also referred to on the record as a child advocate, Samir Pandya, Esquire, argued in favor of an adjudication of dependency. ***See*** N.T., 6/27/23, at 93. He further submitted a brief to this Court in support thereof.

parties and all counsel, over the objection of Father's counsel. Specifically, prior to the *in camera* interview of Child, the following colloquy ensued.

> THE COURT: Okay. Everyone may be excused. If you would, please, bring her in. . . . Everyone is out.
>
> [COUNSEL FOR FATHER]: I don't know. I didn't. I actually didn't hear your directions, Your Honor. I'm sorry.
>
> THE COURT: Everyone is to step out. And [Child] is going to come in --
>
> [COUNSEL FOR FATHER]: Okay.
>
> . . .
>
> [CONSEL FOR FATHER]: But lawyers -- the lawyers can remain?
>
> THE COURT: No. Everyone may be excused. Short of, unless she feels more comfortable with the social worker here. But I think she'll feel comfortable with just me. We'll see when she gets here.
>
> [COUNSEL FOR FATHER]: Well, Your Honor, I'm just going to --
>
> THE COURT: If anyone is needed, well I'll just ask them to come back.
>
> . . .
>
> [COUNSEL FOR FATHER]: -- Your Honor, I'm going to object to that situation. I believe that counsel should be present. . . .

*Id.* at 89-91. The court did however indicate that its interview with Child would be on the record.[4] *See id.* at 91.

---

[4] After the court adjudicated Child dependent, the court held another *in camera* interview with Child outside the presence of counsel to discuss Child's visitation with Father. Following that interview, the court permitted Father one overnight visitation per week in coordination with Father's work schedule. *See* N.T., 6/27/23, at 100-05; *see also* N.T. 6/27/23 (Child's Testimony), at 22-28.

On June 27, 2023, the trial court filed an order adjudicating Child dependent. The court further found that it was in Child's best interest and welfare to be removed from the home, and that the Agency made reasonable efforts to prevent or eliminate the need for removal.

On July 26, 2023, Father filed a timely notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Thereafter, on August 18, 2023, the court filed a responsive Rule 1925(a) opinion.

On appeal, Father raises the following issues for our review:

1. Did the trial court err as a matter of law and abuse its discretion by conducting an interview with [C]hild without the presence of the parties or their counsel, in violation of the Rules of Juvenile Court Procedure?

2. Did the trial court infringe on Father's due process right to cross-examination of witnesses and in-court presentation of evidence by conducting an *ex parte*, in camera interview with Child?

3. Did the trial court violate Child's right to a [GAL] by prohibiting the [GAL]'s presence during two in camera interviews?

4. Did the trial court err as a matter of law and abuse its discretion by adjudicating [Child] to be a "dependent child" pursuant to 42 Pa.C.S.[A.] § 6302 in the absence of clear and convincing evidence that Father was unable to provide proper parental care and control to his child?

5. Did the trial court err as a matter of law and abuse its discretion by committing [Child] to the legal custody of [DHS], and placing [Child] in foster care, in the absence of clear and convincing evidence that placement was clearly necessary?

Father's Brief at 3-4 (cleaned up).[5]

This appeal arises from a dependency order. Our standard of review in this context is well-established:

> Our standard of review requires us "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record[] but does not require [this Court] to accept the lower court's inferences or conclusions of law." ***Interest of T.G.***, 208 A.3d 487, 490 (Pa. Super. 2019). Additionally, we must "exercise our independent judgment in reviewing the court's determination" in order "to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record." ***In re R.W.J.***, 826 A.2d 10, 12 (Pa. Super. 2003) (internal citations omitted). Thus, we review the trial court's determination for an abuse of discretion. ***See T.G.***, ***supra*** at 490. "[A]n abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings." ***Bouzos-Reilly v. Reilly***, 980 A.2d 643, 644 n.1 (Pa. Super. 2009).

***Interest of J.F.***, 308 A.3d 1252, 1256-1257 (Pa. Super. 2024).

With his first and second claims for relief, Father argues that the trial court violated the Pennsylvania Rules of Juvenile Court Procedure ("the Rules"), as well as his due process rights, by excluding his counsel from participating in the *in camera* interview of Child. ***See*** Father's Brief at 12-15. As to the Rules, Father contends, in part, that they provide for cross-examination, as well as require the presence of all counsel during an *in camera* proceeding. ***See id.*** at 14-15 (citing Pa.R.J.C.P. 1406 & Pa.R.J.C.P. 1134).

---

[5] We observe that Father addresses his issues in a different order in the argument section of his brief.

Further, as to due process, relying on *In Interest of Leslie H.*, 478 A.2d 876 (Pa. Super. 1984), *recognized as superseded on separate grounds*, *In re M.T.*, 607 A.2d 271, 280 (Pa. Super. 1992), Father states, "This Court has already definitively ruled that the due process rights of parents to confront and cross-examine witnesses is violated when a trial judge relies on a child's [*in camera*] testimony given without . . . counsel present." Father's Brief at 12-13 (citation omitted). Thus, Father asserts:

> The court in this case . . . did not meet the minimum standards required by this Court and codified in the Rules . . . . The trial court's decision here to exclude Father's attorney from attending [C]hild's testimony or cross-examining [C]hild violated Father's due process rights and the clear directive laid out in the Rules and by this Court in *Leslie H.* and requires vacation of the [d]ependency ruling.

*Id.* at 15.[6]

While not addressing the Rules, the trial court dismisses Father's challenge to violation of his due process rights by stating, "Father was appointed counsel who represented him at the June 27, 2023[] Adjudicatory Hearing. Father had the opportunity to participate, testify, as well as to present evidence and witnesses on his own behalf." Trial Court Opinion, 8/18/23, at 13. The court further reasons that the Child's *in camera* interview was conducted without the presence of the parties' counsel at Child's request

---

[6] To the extent that Father argues that the trial court erred by excluding Child's counsel from Child's *in camera* interview, based on our disposition within, we do not address this issue.

to minimize Child's trauma, anxiety, and fear. *See id.* at 14. Notwithstanding, the court emphasizes that the interview was recorded and unsealed and, therefore, available for review. *See id.* Moreover, the court indicates that Child's statements were in line with prior statements and were not dispositive or controlling to its decision. *See id.* We disagree.

In pertinent part, with respect to *in camera* proceedings, Rule 1134 states:

> **Rule 1134. Proceedings *In Camera***
>
> Upon motion by any party or on the court's own motion, *in camera* proceedings are to be recorded and **each party's attorney shall be present.**
>
> > *Comment: **See** [**In Interest of Leslie H.**, 478 A.2d 876 (Pa. Super. 1984), recognized as superseded on separate grounds, **In re M.T.**, 607 A.2d 271, 280 (Pa. Super. 1992)].*
> >
> > If a party is not represented, the court is to make reasonable efforts to protect the due process rights of the party.

Pa.R.J.C.P. 1134 (emphasis added).[7] Thus, based on the plain reading of Rule 1134, the trial court erred in excluding Father's counsel from Child's *in camera* interview.

---

[7] We further recognize that Rule 1128(B)(2) provides as follows with regard to exclusion from proceedings, "A party may be excluded from a proceeding only for good cause shown. **If a party is so excluded, counsel for the party shall be permitted to be present**." Pa.R.J.C.P. 1128(B)(2) (emphasis added).

- 8 -

With respect to Father's assertion that the trial court also violated his due process rights, this Court has held that, at a minimum, due process demands that counsel for all parties be present for such *in camera* dependency proceedings.[8] In **Leslie H.**, the sixteen-year-old child's parents appealed the trial court's order of adjudication and disposition and argued that the evidence was insufficient. **Leslie H.**, 478 A.2d at 877. The panel vacated the dependency order and remanded the case for a new hearing. In so doing, the panel recognized that the trial court had conducted an *in camera* interview of the child outside of the presence of the parties and their counsel. **Id.** at 878. On remanding the case, this Court stated:

> "It is a serious matter for the long arm of the state to reach into a home and snatch a child from its mother." **In re Rinker**, [117 A.2d 780, 783 (Pa. Super. 1955)]. By closing the proceeding entirely, the court ignored the parents' rights. It denied them relevant information and violated their due process rights to confront and cross-examine the girl. **In Interest of Jones**, [429 A.2d 671 (Pa. Super. 1981)].
>
> On remand, we suggest the court follow the procedure approved in **Cruz v. Commonwealth, Department of Public Welfare**, [472 A.2d 725 (Pa. Cmwlth. 1984)]. That case also involved a

---

[8] Significantly, "[d]ue process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." **In re J.N.F.**, 887 A.2d 775, 781 (Pa. Super. 2005). "Due process is flexible and calls for such procedural protections as the situation demands." **In re Adoption of Dale A.**, II, 683 A.2d 297, 300 (Pa. Super. 1996) (citing **Mathews v. Eldridge**, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)); **see also** *In re M.B.*, 869 A.2d 542, 546-47 (Pa. Super. 2005) ("When conducting review, we note that the needs of each situation inform our analysis and 'our inquiry must then be directed to the questions raised, explored, and decided . . . as to what process is due.'") (quoting **In re J.P.**, 573 A.2d 1057, 1061 (Pa. Super. 1990)).

hearing on alleged child abuse. The two minors in **Cruz** were questioned *in camera,* with only attorneys present. The court on review rebuffed a due process challenge to the proceeding:

> Here, every procedural safeguard was observed short of allowing the appellant to be present when the children testified: the appellant's attorney was present and cross-examined the children; a transcript was made of the children's testimony; and the appellant knew the identity of the witnesses [his children] and had an opportunity to advise his attorney of any factors which he thought might cause them to testify out of bias, revenge or malice. [**Id.** at 728].
>
> **The procedure employed in [*Cruz*], *viz.*, attorneys present and testimony transcribed, seems to us to strike a rational balance between the competing interests. We adopt, then, those safeguards as the minimum necessary to satisfy due process concerns.**[9]

**Leslie H.**, 478 A.2d at 878 (emphasis added).

As such, in the instant matter, the trial court committed an error of law by excluding and preventing Father's counsel from participating in Child's *in camera* interview. This error not only contravened established Rule 1134 but deprived Father of his due process rights. **See** Pa.R.J.C.P. 1134; **Leslie H.**, 478 A.2d at 878. Therefore, we must vacate the trial court's order and remand for a new hearing.

Given the nature of our holding, we do not address Father's other claims.

_____

[9] To the extent that Father additionally argues that the trial court erred by also excluding the parties from Child's *in camera* interview, Father is not entitled to relief. **See Leslie H.**, 478 A.2d at 878.

Based upon the foregoing, we vacate the trial court's order and remand for a new hearing consistent with this memorandum. At this new hearing, Father's counsel, along with counsel for all other parties, shall be permitted to fully participate in the proceedings, including in the questioning of Child.

Order vacated. Case remanded. Jurisdiction relinquished.

Judge Bowes joins the memorandum.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/10/2024