J-A08044-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: F.F., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.G., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2644 EDA 2025 |

Appeal from the Order Entered September 22, 2025
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0000482-2025

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.: **FILED JUNE 3, 2026**

T.G. ("Mother") appeals from the dispositional order adjudicating F.F. (d.o.b. February 2013) ("Child") dependent. Appointed counsel has filed an application to withdraw and brief pursuant to **Anders v. California**, 386 U.S. 738 (1967).[1] We grant counsel's application to withdraw and affirm.

We glean the following facts from our review of the certified record. Philadelphia Department of Human Services ("DHS") became involved with the family when it received a GPS report of child abuse, *i.e.*, lack of care and

_____

[*] Former Justice specially assigned to the Superior Court.

[1] **Anders**' procedure for withdrawal of court-appointed counsel applies in a dependency matter, even in the absence of an involuntary termination decree. **See In re J.D.H.**, 171 A.3d 903, 906 (Pa. Super. 2017).

supervision, in the home. The reporter stated that Child went to Enon Tabernacle Baptist Church around 10:00 A.M. on May 31, 2025, and reported that Mother beat him with a walking cane and threw him out of the home. *See* Dependency Petition, 6/10/25, at 5.

On June 1, 2025, DHS conducted an initial safety visit to Mother's home, at which time Mother admitted she had a history of sending Child outside for long periods of time as a form of punishment. Mother would not allow Child back inside to use the bathroom or get something to eat. While DHS was interviewing Mother, she verbally berated Child, denied him food until DHS stepped in, and tried to force Child out of the home. When the DHS caseworker spoke with Child alone, he said he usually went to the church or to the home of his paternal aunt, V.F., for assistance. He talked about abuse he suffered from Mother and showed bruises and marks that were consistent with being struck by an extension cord. Child said he preferred to be in V.F.'s home and did not want to stay in Mother's care. DHS reached out to V.F., who agreed to cooperate with a safety plan for Child, but Mother refused to sign the safety plan. *See id.*

On June 3, 2025,DHS obtained an Order of Protective Custody ("OPC") and placed Child with V.F. On June 6, 2025, the court held a shelter care hearing for Child, lifted the temporary OPC, and ordered the temporary commitment to DHS to stand. On June 4, 2025, the court appointed the Defender's Association as guardian *ad litem* for Child.

On June 10, 2025, DHS filed a dependency petition asserting the foregoing facts and that services and/or referrals for HIS/FSS; RSRI; parent training; and mental health services had been offered, provided, and/or considered to enable Mother to care for Child. The petition asserted that in-home services would be insufficient to eliminate the risk of abuse or neglect of Child. The petition stated it would be in Child's best interest to be adjudicated dependent and committed to DHS. On September 22, 2025, the court held a dependency hearing.

At the dependency hearing, all counsel, including Mother's counsel, Attorney Nghi Duong Vo, agreed to adjudicate on the basis of present inability.[2] DHS Supervisor Idaly Irizarry-Zayas and Community Umbrella Agency ("CUA") director and supervisor Suzanne Mills testified on behalf of

---

[2] Specifically, counsel for DHS stated, "[T]here's an agreement to adjudicate today with brief testimony. The basis for the adjudication would be present inability[,]" to which Mother's counsel replied, "That's correct. But I would call mother for brief testimony for why she did what she did." N.T., 9/22,25, at 5.

"Pennsylvania Rule of Juvenile Procedure 1405, which addresses stipulations, permits parties to stipulate to the facts upon which the adjudication is based, not the actual adjudication itself. Because an adjudication of dependency is a legal conclusion, only the juvenile court may decide if the facts support an adjudication of dependency." *In re Adoption of G.W.*, 342 A.3d 68, 77 n.6 (Pa. Super. 2025) (citations omitted). Here, to the extent counsels' stipulation can be interpreted as an agreement to the legal adjudication of dependency, it would be error. However, it would be harmless because the record is clear that the court did not accept this stipulation as conclusive, but instead made its own independent findings at the end of the hearing based on the evidence. *See* 42 Pa.C.S.A. § 6341(a) ("After hearing the evidence on the petition the court shall make and file its findings as to whether the child is a dependent child.").

DHS. Mother testified on her own behalf. At the conclusion of the hearing, the court found the facts supported adjudicating Child dependent, placed him in kinship care, and ordered supervised visitation at Child's discretion. The court also directed Mother to undergo alcohol screens, sign releases and consents, provide proof of employment, and be referred for a parenting program.

After the court finished explaining its conclusions and was scheduling an initial permanency review hearing, Mother interjected that she did not believe she was being properly represented. In response, the court asked Mother's counsel if there was anything else he wanted to say, to which he responded that Mother wanted him to call Child to the stand as a hostile witness, but he did not believe that was necessary, and Child's guardian *ad litem*, Attorney Neal M. Masciantonio of the Defender's Association, noted he would object to any such plan. Because counsel had already rested, the court advised Attorney Vo that he could file an appropriate motion for the next hearing if needed.

Counsel filed Mother's timely appeal and contemporaneous statement of errors on appeal. **See** Pa.R.A.P. 1925(a)(2)(1). The trial court filed a Rule 1925(a) opinion that relied on its reasoning set forth at the September 22, 2025 dependency hearing. **See** Pa.R.A.P. 1925(a). Counsel has petitioned to withdraw in this Court and filed an **Anders** brief.

Before reaching the merits of Mother's appeal, we must address counsel's application to withdraw. **See In re X.J**., 105 A.3d 1, 3 (Pa. Super.

2014) (stating "[w]hen counsel files an **Anders** brief, this Court may not review the merits without first addressing counsel's request to withdraw.").

Counsel seeking to withdraw pursuant to **Anders** must:

1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the **Anders** brief to the appellant; and 3) advise the appellant that he or she has the right to retain private counsel or raise additional arguments that the appellant deems worthy of the court's attention.

**J.D.H.**, 171 A.3d at 907 (citation omitted).

Counsel must "attach to [his] petition to withdraw a copy of the letter sent to [his] client advising" her of her rights. **Id.** (quoting **Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa. Super. 2005)). Applications to withdraw filed during the pendency of dependency proceedings have further requirements because a parent has a continuing right to an attorney in such proceedings. Therefore, counsel who seeks to withdraw during dependency proceedings must

inform the parent of ... her right to counsel in any subsequent dependency or involuntary termination proceedings. Counsel must also inform the parent that, if he or she cannot afford counsel, he or she may contact the trial court in order to obtain new counsel. This information must be conveyed to the parent at the same time that counsel informs the parent of his or her other rights pursuant to **Anders**[.]

**Id.** at 906-07; **see also** 42 Pa.C.S.A. § 6337; 23 Pa.C.S.A. § 2313(a.1).

Instantly, counsel filed a motion to withdraw asserting that Mother's appeal lacks merit. **See** Motion to Withdraw, 12/30/25, at 1. After several

insufficient attempts to provide Mother with notice of her rights pursuant to *Anders* and *J.D.H.*,[3] on May 18, 2026, counsel provided proof to this Court that he notified Mother that she has "the right to counsel in any subsequent dependency or involuntary termination proceedings. If you cannot afford counsel, you may contract (sic) the trial court in order to obtain new counsel." Response to Order, 5/18/26.

Accordingly, we conclude Attorney Vo has substantially complied with the dictates of *Anders* and *J.D.H.*, and we will conduct our own independent review to determine if Mother's appeal is, in fact, frivolous.

The *Anders* brief identifies two issues for our review:

> 1. Whether the trial court abused [its] discretion when adjudicating Child dependent?

_____

[3] Specifically, the original letter Attorney Vo sent to Mother incorrectly stated, "You can still pursue your appeal because another lawyer may disagree with me. However, you must retain one yourself without help from the court." Letter, 12/17/25. Finding this insufficient, this Court ordered counsel to furnish Mother with a letter that comports with *Anders*. *See* Order, 1/7/26. In response, counsel provided this Court with a copy of an amendment to his original letter that gave Mother proper notice pursuant to *Anders*. *See* Response to Order, 2/12/26. Because this letter failed to advise Mother of her right to counsel in any further dependency proceeding and that, if she could not afford counsel, the court would appoint an attorney for her, this Court issued an order that contained these additional rights, and directed Attorney Vo to provide Mother with a copy of this Court's order and notify this Court that he had done so within ten days of the order's filing. *See* Order, 4/21/26. When Attorney Vo failed to comply with this Court's order within ten days, this Court ordered Attorney Vo to comply with this Court's April 21, 2026, order within ten days of May 11, 2026, or face contempt sanctions and a report to the Pennsylvania Disciplinary Board. *See* Order, 5/11/26. On May 18, 2026, Attorney Vo provided proof to this Court that he complied with this Court's April 21, 2026, order.

2.     Whether the trial court abused its discretion or committed [an] error of law in the dispositional phase?

*Anders* Brief, at 5.

We review the trial court's decision in this matter for an abuse of discretion, which only exists "when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings." *Interest of J.F.*, 308 A.3d 1252, 1256-57 (Pa. Super. 2024) (citation omitted). When conducting this review, we are required "to accept the findings of fact and credibility determinations of the juvenile court if they are supported by the record; but it does not require the appellate court to accept the juvenile court's inferences or conclusions of law." *Interest of M.G.*, 331 A.3d 703, 716 (Pa. Super. 2025) (citation omitted).

> [T]o adjudicate a child dependent, a trial court must determine, by clear and convincing evidence, that the child:
>
> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent … that places the health, safety or welfare of the child at risk[, including evidence of the parent's … use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk.]
>
> 42 Pa.C.S.A. § 6302(1). "Clear and convincing" evidence has been defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re C.R.S.*, 696 A.2d 840, 843 (Pa. Super. 1997) (citation omitted).

> In accordance with the overarching purpose of the Juvenile Act "[t]o preserve the unity of the family wherever possible," **see** 42 Pa.C.S.A. § 6301(b)(1), "a child will only be declared dependent when he is presently without proper parental care and when such care is not immediately available." … 592 A.2d 55, 57 (Pa. Super. 1991) (citation omitted). This Court has defined "proper parental care" as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." **In re C.R.S.**, **supra** at 845 (citation omitted).

**Interest of Q.R.**, 199 A.3d 458, 437 (Pa. Super. 2018) (citing **In re A.B.**, 63 A.3d 345, 349 (Pa. Super. 2013).

> Here, the trial court explains:

> At the hearing, all counsel agreed to adjudicate on the basis of present inability, including Mother's attorney. Mother provided brief testimony detailing her discipline of the Child that led to the initiation of the OPC. Mother admitted to leaving the twelve-year old Child alone outside as a "timeout" while she left the premises. The trial court heard enough testimony to warrant the agreed upon basis to adjudicate at present inability under 42 Pa.C.S.[A.] § 6302.

Trial Court Opinion, 11/14/24, at 1 (record citations omitted). We discern no abuse of discretion.

DHS supervisor Irizarry-Zayas testified DHS became involved in this case upon receiving a GPS report of lack of care and supervision of Child. **See** N.T., 9/22/25, at 7-8. When the DHS caseworker went to the home, Mother admitted to leaving Child outside as a form of punishment and that, if he had to go to the bathroom or wanted to eat, he was not allowed to come back in the house. **See id.** at 8. Mother initially agreed to sign a safety plan, but, when Child told Mother he was hungry, she told Child to go find something to

eat and advised the caseworker she would not sign the safety plan. Mother sent Child and the caseworker outside and left to get herself some pizza. *See id.* at 9-10. At that point, DHS obtained an OPC and Child was placed with V.F. *See id.* at 10, 12.

CUA supervisor and director Summer Mills testified Child had a Behavioral Health Services ("BHS") evaluation that resulted in a recommendation that he receive trauma therapy. *See id.* at 13. Child told Mills that Mother becomes verbally and physically abusive when she drinks alcohol and will lock him out of the house for hours at a time. *See id.* at 14. Mother did not answer the door when Mills went to the home and, when Mills spoke to Mother on the phone, Mother always called late at night clearly intoxicated. *See id.* at 15. Mills recommended supervised visitation at Child's discretion. As long as another adult was present to supervise, Mills had no safety concerns, as Child told her that he loves his Mother; "she [just] needs to work on a lot of things." *Id.* at 19.

Mills testified that the family's case history revealed that, in December 2023, there was an incident at Child's previous school in which Mother was harassing and threatening the staff to the point that the school had to be closed down for two days and Child was kicked out of the school. *See id.* at 14-15. Mother told Mills she did not actually kick Child out of the house and the door was unlocked, so he could come inside, but he chose not to do so. *See id.* at 16.

Mills also testified Child had inappropriate conduct at V.F.'s home. Child has made unacceptable comments to a visiting adult and the younger children in his aunt's home and was inappropriately looking at teenage girls in the home. When told not to do this and to leave the kitchen, he pulled out a knife on an adult and hid the fire extinguisher in the backyard. Another time he told his aunt he was going to get naked in front of her and asked what she would do. When he had a cold, he said he would purposely cough in the other children's faces to make them sick. ***See id.*** at 16. Based on this and Child's previous behavior with his four- and seven-year-old niece and nephew when he was nine-and-a-half years' old, BHS recommended Child not be placed in a home with younger vulnerable children, and actually that he should be the only child in the home. ***See id.*** at 17.

Mother explained that the day DHS removed Child from the home, she had told Child to stand outside on the patio to take a timeout in response to his bad behavior. ***See id.*** at 20-21. When Mother said that when she left him outside and went to the store, Child went across the street to the church and made the report that instigated DHS's involvement. ***See id.***

Based on the foregoing testimony, we agree with counsel that Mother's first issue is frivolous. The record reflects clear and convincing evidence to support the trial court's finding that Mother's conduct places Child's health, safety or welfare at risk, and that the adjudication of dependency is in his best interest.

The second issue identified in the **Anders** brief asserts that Mother claims the trial court abused its discretion or committed an error of law in sustaining the GAL's objection to calling Child as a hostile witness. **See Anders** brief, at 10. As explained in the **Anders** brief, Mother was "not happy when Child told a social worker of her drinking problems" and wanted him called as a witness to "impeach [his] allegations." **Id.** This issue is frivolous.

"It is well settled that questions concerning the admission or exclusion of evidence in dependency proceedings are within the sound discretion of the trial court and will be reversed on appeal only where a clear abuse of that discretion exists." **Interest of A.J.**, 345 A.3d 374, 387 (Pa. Super. 2025) (citation and brackets omitted). "The Rules of Juvenile Court Procedure provide that in adjudications, each party shall have an opportunity to present evidence subject to the rules of evidence. Pa.R.J.C.P. 1406(C)." **Id.** (citations omitted). "The Juvenile Act states that all proceedings shall be conducted in an informal but orderly manner. … [T]he Juvenile Act [] provide[s] the judge wide latitude in assuring that the truth is brought out and the philosophy and purpose of the Juvenile Act is realized." **Id.** (citation omitted). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." **Interest of K.D.-Z.**, 330 A.3d 831, 837 (Pa. Super. 2025) (citation omitted).

Instantly, the record is abundantly clear that no abuse of discretion or error of law occurred. In fact, the court did not expressly sustain an objection.

After the parties rested, the court delivered its decision, and was scheduling an initial review hearing, when Mother interjected she was unsatisfied with the proceedings. *See* N.T., 9/22/25, at 25. In response, the court asked Attorney Vo if there was something else, and he responded that Mother wanted to call Child to testify, but he had explained to her that he believed this was unnecessary and was resting on the testimony already provided. *See id.* When asked his position, Child's GAL stated he would object to calling Child to testify, as he did not believe it was needed either. *See id.* at 26. The court responded that Attorney Vo already had rested, "so [he] can file an appropriate motion for the next hearing if needed." *Id.*

Based on the foregoing, we agree with counsel that Mother's second issue is frivolous. Further, our own independent review reveals no other nonfrivolous issues. Therefore, we affirm the dispositional order adjudicating Child dependent and grant Attorney Vo's application to withdraw.

Order affirmed. Application to withdraw granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/3/2026